Cecil BROWN, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–1178A337.

Court of Appeals of Indiana,
First District.

April 29, 1980.
Rehearing Denied June 2, 1980.

Steve Barber, George C. Barnett, Evansville, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Janis L. Summers, Gordon E. White, Jr., Deputy Attys. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

### STATEMENT OF THE CASE

Defendant-appellant Cecil Brown was convicted by jury trial in the Vanderburgh Circuit Court of conspiracy to commit a felony, to-wit: second degree arson. Brown was sentenced to prison for a term of not less than two nor more than fourteen years. He now appeals his conviction, alleging numerous errors.

We affirm.

### STATEMENT OF THE FACTS

The evidence most favorable to the State reveals that in the summer of 1974, Cecil Brown was engaged in the operation of night clubs or taverns in Evansville, Indiana. Brown approached Raymond Reed and contracted with Reed to have a competing establishment, the Golden Record, burned down. Shortly thereafter Reed hired Joseph Byrne and William Gibbs to actually set the fire. Early in the morning of August 21, 1974, Byrne and Gibbs set fire to the building in which the Golden Record was located, resulting in its destruction.

Brown, Reed, Byrne, and Gibbs were later arrested and charged in a two-count information with second degree arson [1] and conspiracy to commit a felony,[2] to-wit, second degree arson. Reed and Byrne testified against Brown pursuant to plea agreements with the State. Brown was acquitted of the second degree arson charge, but he was convicted under the conspiracy charge. He now appeals that conviction.

### ISSUES

1. Whether the trial court erred in overruling Brown's motion to dismiss the Third Amended Count II of the information.

---

1. IC 1971, 35 16-1-2 (Burns Code Ed.), repealed effective October 1, 1977, and replaced by IC 1971, 35 43 1- 1 (Burns Code Ed., Repl. 1979).

2. IC 1971, 35-1-111-1 (Burns Code Ed.), repealed effective October 1, 1977, and replaced by IC 1971, 35-41-5-2 (Burns Code Ed., Repl. 1979).

2. Whether the trial court erred in admitting evidence of out-of-court statements of co-conspirators.

3. Whether the trial court erred in overruling Brown's objection to Raymond Reed's competency to testify.

4. Whether the trial court erred in excluding a tape-recorded telephone conversation between Brown and William Gibbs.

5. Whether there was a fatal variance between the proof and the charge.

6. Whether the jury's verdicts were irrationally inconsistent.

7. Whether the trial court erred by intimating its opinion of the weight of accomplice testimony.

8. Whether the trial court erroneously instructed the jury regarding competency and credibility.

## DISCUSSION

*Issue One*

Brown contends that Third Amended Count II of the information is fatally defective and that the court's overruling of his motion to dismiss addressed thereto constitutes reversible error. Brown argues that Third Amended Count II of the information was fatally defective in three particulars: (a) failing to allege material and essential elements of the crime of conspiracy to commit second degree arson in not charging that Brown conspired to "*wilfully and maliciously*" set fire to a building; (b) failing to set out Brown's role in the conspiracy; and (c) not being signed by the prosecuting attorney.

It is true that the Third Amended Count II does not charge that Brown "*wilfully and maliciously*" conspired to set fire to a building. It is also true that the statute governing this prosecution which defines the crime of second degree arson provides insofar as applicable to this case:

"Any person who *wilfully and maliciously* sets fire to or burns, or causes the setting of fire to or burning, or who aids, counsels or procures the setting of fire to

or the burning of any barn, garage, stable or other building, finished or unfinished, occupied or unoccupied, not a part or parcel of any dwelling house, rooming house, apartment house or hotel, or any shop, storehouse, warehouse, factory, mill or other building, or any church, meetinghouse, courthouse, workhouse, school, jail or other public building or any bridge, finished or unfinished, occupied or unoccupied; such being the property of another, * * * shall be guilty of arson in the second degree and shall, upon conviction thereof, be imprisoned in the state prison not less than five (5) years nor more than ten (10) years, to which may be added a fine of not to exceed two thousand dollars ($2,000)." [3] (Emphasis added.)

Third Amended Count II of the information in this case charges:

" * * * that JOSEPH BYRNE, WILLIAM GIBBS, CECIL BROWN & RAYMOND REED on or about the 21st day of August A.D., 1974, at said County and State as affiant verily believes: did *unlawfully, knowingly and feloniously* unite, combine, conspire, confederate and agree to and with each other, for the object and purpose and with the *unlawful and felonious intent* to set fire to and burn a certain building, not a part and parcel of any dwelling house, rooming house, apartment house or hotel, situated at 122 S.E. 4th Street, City of Evansville, County of Vanderburgh, State of Indiana, such building being the property of another person, to-wit: Louis F. Wilson, Jr. and Rudolph A. Hoefling d/b/a The Golden Record, Inc., and Rosemarie Investments, Inc., in violation of I.C. 35-1-111-1, as found at Burns Ind. Stats. Anno. Sec. 10-1101 (1956 Repl.), and I.C. 35-16-1-2, as found at Burns Ind. Stats. Anno. Sec. 10-302 (1974 Supp.). * * *" (Emphasis added.)

We agree with Brown that a charge of conspiracy to commit a felony under the conspiracy statute applicable to

**3.** IC 35 16 1 2.

this case,[4] must set forth all of the elements essential to establish the felony which was the object of the conspiracy. *Kelly v. State*, (1936) 210 Ind. 380, 3 N.E.2d 65; *Genett v. State*, (1925) 197 Ind. 105, 149 N.E. 894; *Williams v. State*, (1919) 188 Ind. 283, 123 N.E. 209; *Allen v. State*, (1915) 183 Ind. 37, 107 N.E. 471. Brown asserts that the failure to allege that the named defendants conspired to *"wilfully and maliciously"* set fire to and burn the building in question renders the charge fatally defective under the foregoing rule. We disagree.

Third Amended Count II charged that the named defendants "did *unlawfully, knowingly and feloniously* unite, combine, conspire, confederate and agree to and with each other, for the object and purpose, and *with the unlawful and felonious intent* to set fire to and burn a certain building * *" (Emphasis added.) We believe, for reasons hereinafter set forth, that the allegation that the defendants "*unlawfully, knowingly and feloniously*" conspired "*with the unlawful and felonious intent* to set fire to and burn" the building is tantamount to alleging a conspiracy to "*wilfully and maliciously*" set fire to and burn the building.

In *Fox v. State*, (1979) Ind.App., 384 N.E.2d 1159, 1166–67, n.16, a first degree arson case, Judge Shields stated:

"* * * The statute, I.C. 35–16–1–1, uses the terms 'wilfully and maliciously.' A '*willful*' setting fire to or burning would be such an act *consciously and intentionally*, as distinguished from accidentally, involuntarily, or negligently done, and implies that the act must be done *knowingly* and according to a purpose. . . . A '*malicious*' burning is an act done with a condition of mind that *shows a heart regardless of social duty and bent on mischief*, evidencing a design to do *an intentional wrongful act* toward another *without any legal justification or excuse*. * * *" (Emphasis added.) (Citations omitted.)

"*Willful*" has been defined as follows:

"Proceeding from a conscious motion of the will; voluntary. . . .

Intractable; having a headstrong disposition to act by the rule of contradiction. . . . Obstinate; perverse.

. . .

Intending the result which actually comes to pass; designed; *intentional*; not accidental or involuntary. . . .

\* \* \* \* \* \*

Conscious; *knowing*; done with stubborn purpose, but not with malice. . .

Premeditated; *malicious; done with evil intent, or with a bad motive or purpose*, or with indifference to the natural consequences; *unlawful*; without legal justification. . . ." (Citations omitted.) (Emphasis added.)

*Black's Law Dictionary* 1773–74 (Rev.4th ed. 1968).

The term "maliciously" is defined in the following terms:

"Imports a wish to vex, annoy, or injure another, or *an intent to do a wrongful act*, and may consist in direct intention to injure, or in reckless disregard of another's rights. . . ." (Citation omitted.) (Emphasis added.)

*Black's Law Dictionary, supra*, at page 1111.

The same source defines "*malicious*" as "[c]haracterized by, or involving, malice; having, or done with, wicked or mischievous intentions or motives; *wrongful and done intentionally without just cause or excuse.* . . ." (Citation omitted.) (Emphasis added.). *Black's Law Dictionary, supra*, at page 1110. Further, a "*malicious act*" is said to be "[a] wrongful act intentionally done without legal justification or excuse; an unlawful act done willfully or purposely to injure another. . . ." (Citation omitted.) (Emphasis added.) *Black's Law Dictionary, supra*, at page 1110.

Having thus examined definitions of the terms "wilfully" and "maliciously," we turn to an examination of definitions of the terms "unlawfully" and "feloniously."

---

4. IC 35 1 111 1.

"Unlawfully" is defined as "illegally; wrongfully." *Black's Law Dictionary, supra,* at page 1706. The term "feloniously" is defined by the same law dictionary, at page 744, as follows:

"Of, pertaining to, or having, the quality of felony. . . .

Means *proceeding from an evil heart or purpose done with a deliberate intention of committing a crime.* . . . *Without color of right or excuse.* . . . Malignantly; *maliciously.* . . . *Wickedly* and against the admonition of the law. . . . With a felonious intent." (Emphasis added.) (Citations omitted.)

The word "feloniously" is equivalent to "purposely" or "unlawfully." *Mann v. State,* (1933) 205 Ind. 491, 186 N.E. 283, 187 N.E. 343. Further, it has been said that the word "feloniously" is equivalent to the word "unlawfully," *State v. Anderson,* (1885) 103 Ind. 170, 2 N.E. 332, and that "the use of the word 'unlawfully' precludes all legal excuse for the offense. * * *" *State v. Closser,* (1912) 179 Ind. 230, 238, 99 N.E. 1057, 1060.

From our comparison of the definitions of the terms used in the second degree arson statute with the terms used in the charging instrument in this case, we believe that the charge that the named defendants *unlawfully, knowingly, and feloniously* conspired *with the unlawful and felonious intent* to set fire to and burn the building is tantamount to charging that they conspired to *wilfully and maliciously* set fire to and burn the building. The exact words of the statute need not be employed, but words which import the same meaning, if employed instead, will be sufficient. *Chandler v. State,* (1895) 141 Ind. 106, 39 N.E. 444; *State v. Anderson, supra.* We believe that the Third Amended Count II adequately informed Brown of the charge in words which fairly imported the same meaning as those used in the statute. Whether Brown was charged with conspiring to wilfully and maliciously set fire to and burn the building or with unlawfully, knowingly, and feloniously conspiring with the unlawful and felonious

intent to set fire to and burn the building, it is clear that he is charged with acting with a malevolent purpose to unlawfully burn the building. The words "wilfully and maliciously," as used in the statute, might have been the preferable form, but the words employed import the same meaning.

Brown argues, next, that the Third Amended Count II of the information was defective in that it failed to allege with particularity his role in the alleged conspiracy and what part he allegedly had or was to have in the commission of the substantive or underlying crime. Brown cites *State v. Baker,* (1963) 244 Ind. 150, 191 N.E.2d 499, and *Bickel v. State,* (1978) Ind. App., 375 N.E.2d 274, in support of this contention. He further argues that the State's failure to make specific allegations in the information placed an undue burden upon the defense.

In *Baker, supra,* defendants Baker and Silver were charged by affidavit with conspiring to appropriate to their own use certain funds of a finance company of which Baker was president. The defendants moved to quash the affidavit, the trial court granted the motion, and the State appealed. The Supreme Court observed initially that the affidavit might be sufficient to charge conspiracy to commit larceny. However, because the parties had argued the case as though the affidavit purported to charge conspiracy to commit embezzlement, the Court decided the case on that basis.

The Supreme Court found that there was no direct allegation that the particular money which Silver allegedly conspired to embezzle came into his control and possession by virtue of his office in the finance company. Neither was there an allegation that the money came into his hands because of his access to the corporation's funds in the bank or to the company's checks. The Supreme Court concluded that the affidavit failed to state the charge of embezzlement with the degree of certainty required by prior decisions of that Court.

The Court in *Baker, supra,* then made the following comment:

"Furthermore, the affidavit failed to charge specifically what part, if any, either Baker or the appellee Silver was to have in the purposed embezzlement conspiracy. It failed to allege any particulars as to the method by which they conspired to consummate the embezzlement. In fact it does not disclose whether the purposed embezzlement was to be committed jointly by the two alleged conspirators or whether it was to be committed by appellee Silver alone. To constitute a conspiracy there must be an intelligent and deliberate agreement involving a concert of action in a common purpose by two or more persons. * * * The affidavit does not contain these essential allegations." (Citations omitted.)

244 Ind. at 155, 191 N.E.2d at 501.

Brown also relies upon *Bickel, supra*. In that case Bickel and another were charged simply with conspiring "to commit a felony, to-wit: robbery; . . . ." 375 N.E.2d at 274. Bickel was convicted of conspiracy and he appealed, challenging the sufficiency of the charging information.

The Third District of this Court reversed the conviction, offering the following observation:

"We perceive two particular deficiencies in the information. (1) It fails to set out Bickel's role in the conspiracy. *See State v. Baker* (1963), 244 Ind. 150, 191 N.E.2d 499. (2) It fails to describe the intended felony with the same certainty and particularity as an indictment for committing such felony. *Kelley v. State* (1936), 210 Ind. 380, 3 N.E.2d 65. Bickel's information did no more than name the intended felony, robbery, without naming any of the elements of robbery. Such an information is insufficient. * * *

An accused has a right to require that any crime alleged against him be charged with sufficient certainty to enable him to anticipate the proof which would be adduced against him so he could meet it. * * *. Bickel was denied this right. His motion to dismiss the information should have been granted." (Citations omitted.)

375 N.E.2d at 274–75.

We find that *Baker, supra* and *Bickel, supra*, are clearly distinguishable from the case at bar and that they do not stand for the proposition that the Third Amended Count II here is defective in that it failed to set out Brown's role in the conspiracy and his intended part in the substantive offense.

To begin with, the affidavit in *Baker, supra*, and the information in *Bickel, supra*, were clearly deficient for other reasons. In *Baker*, there was no allegation that the funds which were allegedly to have been embezzled came into Silver's possession as a result of his being president of the finance company or by virtue of his access to the company's funds. Such an allegation had long been required in a charge of embezzlement. In *Bickel*, there was no mention of any of the elements of the crime of robbery, which would clearly be required in an information charging robbery.

Furthermore, the Supreme Court in *Baker* opined that the affidavit might have been sufficient to charge conspiracy to commit larceny. We observe, however that that affidavit no more alleged Silver's or Baker's intended part in a larceny than it alleged his intended part in an embezzlement.

Finally, we have been unable to locate any other authorities which require the defendant's role in the conspiracy or his intended part in the underlying offense to be alleged in the charging instrument.

■ Although the general rule in Indiana is that "[a]n indictment or information must 'state the facts and circumstances' which underlie the charged offense," this "requirement is not so rigidly observed as to preclude minor variances which do not mislead the defendant or do not omit an essential element." *Ingle v. State*, (1978) Ind.App., 377 N.E.2d 885, 889. Moreover, a charge of conspiracy in an indictment or an information "need only be so certain and particular as to enable the accused, the court and the jury to determine the crime for which conviction is sought." *Gubitz v.*

*State,* (1977) Ind.App., 360 N.E.2d 259, 266–67.

We have determined that the statements in *Baker, supra,* and *Bickel, supra,* which speak of the role or part to have been played by the defendant are gratuitous and that those cases do not require the State to set forth in a charging instrument each step to be taken by each conspirator. Specificity with regard to the roles played or to have been played by each conspirator may be properly reserved for the probable cause affidavit or the probable cause hearing.

The probable cause affidavit which was filed to obtain a warrant for Brown's arrest did, in fact, allege that Raymond Reed had contracted with Brown to burn the Golden Record and that Reed, in turn, paid Joseph Byrne and William Gibbs for setting the fire. Furthermore, although the depositions have not been included in the record, we note that Raymond Reed, Debra Kay Barron Houghton, and Larry V. Sparks[5] were subpoenaed to appear for a deposition. Also, the trial court's discovery orders indicate that Brown was given access to witnesses' statements which the State held in its file. It is apparent that Brown had ample opportunity to discover the theory of the State's case.

We hold that the Third Amended Count II adequately informed Brown, the trial court, and the jury of the crime for which he was prosecuted and did not unduly burden Brown by its failure to lay out the State's theory in minute detail.

Brown also contends that Third Amended Count II of the information is fatally defective because it was not signed by the prosecuting attorney or his deputy as required by statute. The pertinent statute provides:

" * * * The information shall be signed by the prosecuting attorney or his deputy and sworn to by him or any other person."

IC 1971, 35–3.1–1–2(b) (Burns Code Ed.).

Here, Third Amended Count II of the information was signed by Larry V. Sparks and sworn to by him before Lorraine Dean, Deputy Clerk of the Vanderburgh Circuit Court on March 27, 1975. On the reverse side of said count of the information is the printed legend:

"The within affidavit approved by me this 27 day of March, 1975.

---

Prosecuting attorney
BY s/ William J. Brune
Deputy."

The signature of William J. Brune appears to be by rubber stamp. The reverse side of Second Amended Count I of the information bears the same printed matter and stamped signature except that the stamped signature of William J. Brune appears on the line marked "Prosecuting Attorney." The language used in this endorsement of approval is that required by the former statute relative to prosecution of crimes by affidavit which provided:

"When any such affidavit has been made, as provided in the last section, the prosecuting attorney shall approve the same by indorsement, using the words 'approved by me' and sign the same as such prosecuting attorney. * * *"

Burns Ind. Stat. Sec. 9–909.

Under the former statute it has been held that a signature affixed by a rubber stamp is sufficient if done by the authority of the prosecuting attorney. *Zoller v. State,* (1920) 189 Ind. 114, 126 N.E. 1. Here, Brown does not question the prosecutor's authorization of the use of his rubber stamp signature. Rather, he contends that the body of the charging instrument had to be signed by the prosecuting attorney instead of by Larry V. Sparks. The purpose of the requirement of the indorsement "approved by me" signed by the prosecuting attorney was to assure that all criminal prosecutions were in fact approved by the prosecuting attorney and initiated by the prosecuting attorney who was the officer vested with jurisdiction to act for the State. *State ex rel. Freed v. Martin Circuit Court,* (1938) 214 Ind. 152, 14 N.E.2d 910. *Lynn v. State,* (1934) 207 Ind. 393, 193 N.E. 380.

---

5. Larry V. Sparks was the affiant in both the probable cause affidavit and the information.

We believe that the purpose of requiring the signature of the prosecuting attorney or his deputy to an information, as stated in IC 35–3.1–1–2(b), is the same as under the former law, that is, to assure that such prosecutions have been investigated by and approved by the only officer authorized to initiate criminal prosecutions, namely, the prosecuting attorney. The indorsement of approval by the prosecuting attorney on the reverse side of said Third Amended Count II of the information meets that policy of the law and is a sufficient compliance with the statutory requirement that the information be signed by the prosecuting attorney.

*Issue Two*

Brown contends that the trial court erroneously permitted certain testimony to be given regarding out-of-court statements of co-conspirators.

Brown first complains about Joseph Byrne's response to a particular question during direct examination by the State. The prosecutor had been questioning Byrne about his involvement in the burning of the Golden Record. Byrne admitted that he and William Gibbs had set the fire. The examination continued as follows:

"Q. How did you and Mr. Gibbs come to go over and burn the Golden Record?

A. Raymond Reed propositioned us, offered us some money to burn it down.

Q. How much did Raymond Reed indicate that you would be paid if you burned the Golden Record?

A. Five-hundred dollars.

Q. How much did you actually receive?

A. I received two-hundred and Raymond Reed received a hundred and William Gibbs received two-hundred.

Q. How about the extra hundred? You said five-hundred.

A. Raymond Reed got a hundred. I got two hundred and Gibbs got two-hundred.

Q. When did Raymond Reed approach you about burning the Golden Record?

A. It was a day or two before the Golden Record burnt.

Q. Where did he approach you?

A. Melton's Piano Bar on Gum and Line Street.

Q. Who was present when he approached you?

A. Me, William Gibbs, Deborah Barron and she had somebody with her. I can't remember the man's name at the moment.

Q. What, if anything, was said by Raymond Reed about the Golden Record?"

At this point defense counsel objected on the ground that the response would be hearsay and that, up to that time, the State had introduced no evidence of a conspiracy. The trial court overruled the objection, however, and Bryne responded:

"A. He told us that Cecil paid him to burn the Golden Record down and he didn't do a good job of it so he paid him again for him to find somebody to burn it down and we were to burn it down or we didn't get our money so we burnt it down and Raymond Reed paid us our money."

Brown's objection to Byrne's hearsay testimony concerning Reed's declarations about what Brown had told him is grounded in the following language in *Patton v. State*, (1961) 241 Ind. 645, 648, 175 N.E.2d 11, 12:

"[E]vidence of acts or statements of parties to a conspiracy in furtherance of its objects, is admissible against all the parties to the conspiracy though the statements were made or the acts were performed in the absence of the defendants.

. . .

However, it is also true that before the acts or declarations of one conspirator are admissible into evidence against a coconspirator, there must be some evidence, either direct or circumstantial of the existence of a conspiracy. . . ." (Citations omitted.)

■ We hold that the admission of Byrne's testimony concerning Brown was not erroneous. Prior to giving testimony in question, Byrne had testified, without objection, that Reed had paid him and Gibbs to set the fire. This in itself is evidence of the existence of a conspiracy. Consequently, the out-of-court declaration of Reed, a co-conspirator, concerning Brown's statement was admissible against Brown under *Patton, supra.* Under the circumstances, Byrne's testimony is not considered hearsay. *See Resnover v. State,* (1978) 267 Ind. 597, 372 N.E.2d 457.

Brown also complains of the admission, over his objection, of testimony referring to acts or statements of co-conspirators either prior to the formation of the conspiracy or after its termination.

■ Brown's arguments in this regard are based upon another qualification of the rule on admissibility of co-conspirators' out-of-court statements or acts laid out in *Patton, supra* :

"It is further well established that only those acts and declarations which transpired or were made between the beginning and the ending of the conspiracy and in furtherance of its objects may be shown against the asserted coconspirators who did not make the declarations or do the acts in question. . . . In this connection it has been held that a confession or admission of the existence of a conspiracy by one coconspirator after he has been apprehended or arrested is not in furtherance of the conspiracy so as to be admissible against his fellow conspirators. . . ." (Citations omitted.)

241 Ind. at 648–49, 175 N.E.2d at 13. Even where, for example, an out-of-court statement or admission would not be inadmissible hearsay because the declarant is in court and available for cross-examination under *Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482, such a statement or admission would be *immaterial* and would be inadmissible as direct proof of the conspiracy if it were outside the scope of the conspiracy. *Berridge v. State,* (1976) 168 Ind.App. 22, 340 N.E.2d 816.

■ Brown argues that the trial court erred in permitting Reed to testify that four or five days prior to the fire, he (Reed) told Gibbs that a friend wanted the Golden Record burned down and that the friend was willing to pay $400 for the job. Brown maintains that this was "mere conversation" and is not equivalent to an agreement. Therefore, he concludes, Reed's out-of-court declaration was prior to and outside the scope of the conspiracy.

We disagree. It is true that this declaration, by itself, does not establish an agreement between Brown (the "friend") and Reed or between Reed and Gibbs. However, it was clearly a part of the negotiations which resulted in such agreements. Reed's declaration concerning his friend's offer was not outside the scope of the conspiracy.

Brown has brought to our attention four occasions during the trial in which a witness was permitted to testify regarding statements which were made after the termination of the conspiracy.

On one of those occasions, Deborah Kay Barron Houghton was asked about a telephone conversation between herself and Brown after Brown had been arrested in connection with the arson. The conversation dealt with her offer not to testify against Brown in exchange for a sum of money. The trial court admonished the jury to consider Houghton's testimony concerning the conversation only in regard to Count I, the second degree arson charge, and not in regard to the conspiracy charge.

■ We find no reversible error here, because the reason which Brown gave for his objection is inappropriate. Houghton was not charged as a co-conspirator with regard to the Golden Record fire. Consequently, *Patton, supra,* in which it was held that a *conspirator's out-of-court statement* made during and in furtherance of the conspiracy is admissible against a co-conspirator, is inapplicable to Houghton's testimony. Where a party fails to give the correct reason in support of his objection at trial, we will not reverse the trial court's

ruling on that objection. *State v. Maplewood Heights Corp.*, (1973) 261 Ind. 305, 302 N.E.2d 782.

Brown also objected to the prosecutor's questioning of Reed concerning conversations Reed had with Brown after the conspirators had been charged. The court carefully admonished the jury to consider Reed's responses only in connection with the second degree arson charge. Our Supreme Court has said that an error in the admission of evidence, *Carmon v. State*, (1976) 265 Ind. 1, 349 N.E.2d 167, or a misstatement by the trial court, *Cooper v. State*, (1977) 265 Ind. 700, 359 N.E.2d 532, is presumptively cured by an admonition to the jury, and the defendant has the burden of showing prejudice. We hold that, although the admonition here was not given to cure an error as such, it is presumed to prevent prejudice, absent a contrary showing by Brown. Brown has failed to convince us that he has been prejudiced.

Brown argues that Byrne should not have been permitted to testify that after he was arrested he told the police that Reed had paid him and Gibbs to burn down the Golden Record for Brown. However, this testimony was given subsequent to the portion of Byrne's testimony which we have already held to be admissible under *Patton, supra*, and it adds nothing to what Byrne had already asserted. Brown was not prejudiced by this testimony.

Brown correctly argues that Byrne testified that he had never talked to Brown prior to his release from jail on bail. He complains that the State nevertheless continued to question Byrne about a conversation he had with Brown after he was released on bail. He claims that Byrne was "permitted" to testify that Reed told him that Brown owned three nightclubs. We note, however, that the State had simply asked what personal knowledge Byrne had, prior to the fire, as to the type of business Brown was in. Counsel for Brown objected to Byrne's response. When it was shown that Byrne's only knowledge of Brown's business was hearsay from Reed, the court sustained the objection. Brown has demonstrated no error here.

Brown further argues that the court erred in denying his motion for an admonition to the jury to ignore the State's line of questioning after the State had asked whether Byrne received anything from Brown while he was in Brown's office. However, the court sustained Brown's objection, and Byrne had not yet answered the question. We hold that the trial court committed no reversible error in denying Brown's motion for an admonition.

Brown also asserts that the court improperly overruled his objection to Byrne's statement that after he was released on bail, he met Brown at one of Brown's nightclubs and Brown gave him $200. The question on re-direct examination to which Brown objected was, "[What] was the conversation that was had between you and Mr. Brown?" Counsel for Brown objected, prior to Byrne's response, on the ground that the question referred to a conversation with a co-conspirator after the conspiracy had terminated. The court overruled the objection.

The question does not, on its face, refer to the conspiracy. Consequently, the trial court properly determined that the ground asserted in support of the objection was inappropriate. We will not reverse the trial court's overruling of the objection under the circumstances. *State v. Maplewood Heights, Corp., supra*. Byrne went on to testify that he went to see Brown to get his "bond money back" and that Brown gave him $200 for that purpose. This testimony is not on its face objectionable, because it does not in itself tend to prove Brown's participation in the conspiracy. Byrne also testified on re-direct examination that Brown offered him "thousand dollars" [sic] to get out of town. On re-cross examination, Byrne said that the amount Brown offered was $5,000. Counsel for Brown neither objected to nor moved to strike this testimony regarding Brown's offer of money to Byrne to procure his absence. "Evidence that an accused has procured or attempted to procure the absence of a witness

and thereby prevent or attempted to prevent his testifying is admissible against him." *Eacock v. State*, (1907) 169 Ind. 488, 499, 82 N.E. 1039, 1044; *see also Washington v. State*, (1980) Ind., 402 N.E.2d 1244. The admission of the offer of payment to procure Byrne's absence renders harmless any possible error in the admission of Byrne's testimony that Brown gave him $200 for bail money.

*Issue Three*

At the trial, counsel for Brown challenged the competency of Raymond Reed, who was called to testify for the State. An in camera hearing was held to determine Reed's competency. Reed testified as did Dr. John Clare, a clinical psychologist, and Dr. Sabahattin Bilgutay, a psychiatrist. Dr. Bilgutay had been treating Reed at the Richmond State Hospital where Reed was an inpatient up to the time of the trial. The testimony at the in camera hearing revealed that Reed was psychotic and delusional and that he was suffering from paranoid schizophrenia.

Brown contends that the trial court erred in overruling his objection to Reed's competency to testify, because under IC 1971, 34–1–14–5 (Burns Code Ed.)[6] persons are not competent to testify if they are "insane at the time they are offered as witnesses, whether they have been so adjudged or not." He maintains that the evidence of Reed's mental state showed that Reed's testimony would be unreliable because he was unable to distinguish between truth and delusion.

Justice Hunter aptly stated both the test of competency of a witness and the standard of appellate review of a trial court's ruling on the competency of a witness in *Ware v. State*, (1978) Ind., 376 N.E.2d 1150, 1151–52, in which he wrote:

"It is the general rule that unsoundness of mind does not per se render a witness incompetent. The test of competency of a witness is whether the witness has sufficient mental capacity to perceive, to remember and to narrate the incident he has observed and to understand and appreciate the nature and obligation of an oath. . . .

When the trial court has passed upon the issue of competency of a witness and has found the witness to be competent, the reviewing court will interfere only if a manifest abuse of discretion appears. . . ." (Citations omitted.)

We would add that the trial court has the benefit of being able to observe the challenged witness and to listen to his replies to questions during the competency hearing. We must take this into account as we determine whether the trial court abused its discretion. *See Tyrrel v. State*, (1912) 177 Ind. 14, 97 N.E. 14.

We have examined the transcript of the in camera competency hearing, and we are satisfied that there is sufficient evidence on each of the required elements of competency. The expert testimony indicated that Reed might tell the truth on the witness stand or he might testify on the basis of a delusion. However, this is a matter of credibility rather than competency. We find no manifest abuse of discretion in the trial court's ruling that Raymond Reed was competent to testify.

*Issue Four*

During the course of Cecil Brown's testimony at trial, his attorney offered to introduce into evidence and to play for the jury a tape recording of an alleged telephone conversation between Brown and William Gibbs. In that conversation Gibbs allegedly made statements which tend to exculpate Brown. The trial court sustained the State's objection to the introduction of the tape, apparently on the ground that Brown had not satisfactorily identified the caller. Brown complains that although he did not know Gibbs and could not positively identify his voice, there was sufficient circumstantial evidence that Gibbs was the caller to entitle him to introduce the tape. Ac-

---

**6.** IC 34–1–14–5 is made applicable to criminal cases by IC 1971, 35–1–31–3 (Burns Code Ed., Repl.1979).

cording to Brown, the court's failure to allow him to introduce the tape recording into evidence was fundamental error.

We hold that the trial court correctly excluded the tape recording, but perhaps not for the reason the court had in mind. Although there may be some question as to whether the caller was sufficiently identified as Gibbs, we find that a more basic problem with the tape recording is that it constituted hearsay. This ground was suggested by the State during the hearing, out of the jury's presence, on the admissibility of the tape recording.

The alleged telephone call was made some time after Brown and Gibbs had been arrested in connection with the fire. Thus, the co-conspirator non-hearsay rule found in *Patton, supra*, is inapplicable because the declarations were made outside the scope of the conspiracy. The *Patterson, supra*, hearsay exception is inapplicable because Gibbs was not shown to be available for cross-examination. The transcript of the arguments on admissibility of the tape recording indicates that a man claiming to be William Gibbs entered the courtroom at one point in the trial. However, whether or not Gibbs was, in fact, in the courtroom, the State's case against him in connection with the arson was apparently still pending. Consequently, Gibbs could not have been required to give any testimony which might have been incriminating to him. *See Overman v. State*, (1924) 194 Ind. 483, 143 N.E. 604. The result is that Gibbs was unavailable for cross-examination, and his alleged out of court declaration is inadmissible hearsay.

*Issue Five*

Brown raises several allegations of error relating to variances between the evidence adduced and the charge of conspiracy.

He contends at the outset that the evidence did not satisfy the language of Third Amended Count II, in which it was alleged that Byrne, Gibbs, Brown, and Reed "did . . . agree to and with each other. . . ." Brown maintains that the information thus required the State to prove an agreement among all four of the alleged conspirators. Brown asserts that the State

at best proved two separate conspiracies. Similarly, Brown complains that State's Instruction No. 7, which was read to the jury, conflicted with the information in that the instruction advised the jury that it could find Brown guilty if it found beyond a reasonable doubt that he "conspired with any or all of the persons with whom he is alleged to have conspired . . . ." Furthermore, Brown argues that the trial court erred in refusing Brown's Instruction No. 13, which would have told the jury that "[i]n order to convict the defendant Cecil Brown, of the offense of Conspiracy . . . the State must prove that: 1. Joseph Byrne, William Gibbs, Cecil Brown, and Raymond Reed did unite, combine, conspire, confederate and agree (to and with each other), . . . ."

In support of his contentions, Brown relies heavily upon *United States v. Lindsey*, (7th Cir. 1979) 602 F.2d 785. In that case the defendant was convicted of conspiracy " 'to receive, conceal, sell and dispose of stolen motor vehicles' " in violation of 18 U.S.C. §§ 2313 and 371 (1976). 602 F.2d at 786. The defendant and eight others had been charged with participating in one overall conspiracy. However, the evidence showed that one group of alleged conspirators stole and delivered the vehicles and sold them to the other conspirators. It was not shown that any of the purchasers, including the defendant, knew of the existence of the other purchasers. The court determined that the evidence thus proved that the defendant was involved in a smaller, separate conspiracy.

The court explained, however, that this variance between the indictment and the proof would not necessitate a reversal unless the defendant had been prejudiced by the presentation of the case on an overall conspiracy charge. In summarizing the holdings of the United States Supreme Court on the subject, the Seventh Circuit Court of Appeals listed the following factors as criteria to be considered in determining whether a variance of this kind is prejudicial:

"(1) surprise to the defendant resulting from the variance, (2) possibility of subsequent prosecution for the same offense, (3) likelihood of jury confusion as measured by the number of conspirators charged and the number of separate conspiracies proven, and (4) likelihood of jury confusion in light of the instructions given the jury limiting or excluding the use of certain evidence not relating to the defendant."

602 F.2d at 787. Concluding that there was a significant possibility that the defendant was prejudiced by the variance, the court reversed the conviction.

Brown contends that although the facts in *Lindsey, supra*, and in his case are not identical, the two cases are sufficiently similar to warrant a reversal of his conviction.

■ We disagree with Brown, for we find that there was no prejudice to Brown here as there was to Lindsey. Brown has not convinced us that more than one overall conspiracy was proven in his case. Substantial evidence was introduced at trial which tended to show that Brown, Reed, Byrne, and Gibbs all had the same objective, to burn the Golden Record. That the evidence shows Brown supplied the funds, Reed arranged for the arson, and Byrne and Gibbs set the fire does not prove that there were two or more conspiracies. In *Brewster v. State*, (1917) 186 Ind. 369, 372, 115 N.E. 54, 55 *overruled on another ground, Bryan v. Reiff*, (1922) 192 Ind. 264, 135 N.E. 886, our Supreme Court quoted with approval 5 R.C.L. 1088, § 37, in which we find the following pertinent language:

" 'It is not necessary to prove that the defendants came together and actually agreed in terms to have the unlawful purpose, and to pursue it by common means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of the same so as to complete it, with a view to the attainment of that

same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object.' "[7]

■ Furthermore, we cannot see how the jurors were misled when they were told in State's Instruction No. 7 that they could find Brown guilty if they found beyond a reasonable doubt that he "conspired with any or all of" the alleged co-conspirators, even though the information charged that Brown and the other three "did . . . agree to and with each other. . . ." The difference in language of which Brown complains is immaterial. *See DeVault v. State*, (1970) 254 Ind. 546, 261 N.E.2d 232; *Mattingly v. State*, (1957) 237 Ind. 326, 145 N.E.2d 650. State's Instruction No. 7 correctly states the law and, consequently, Brown's Instruction No. 13 was correctly refused by the trial court.

■ Brown further complains that State's Instruction No. 9 is an incorrect statement of the law. That instruction provides as follows:

"A person engaged in the commission of an unlawful act is legally responsible for all of the consequences which may naturally or necessarily flow from it; thus, if a person combines and confederates with others to accomplish an illegal purpose, he is criminally liable for everything done by his confederates, which flows incidentally in the natural consequences, even though it was not intended as a part of the original design as common plan."

Brown maintains that the instruction is erroneous for two reasons. First, he says that "[a] conspirator is liable only for the fair import of the concerted purpose or agreement as he understands it." Secondly, he complains that the instruction failed to state that the jury must find proof of each material element of the crime of conspiracy before applying the standard laid out in the instruction.

**7.** This principle has been reaffirmed more recently in *Lane v. State,* (1972) 259 Ind. 468, 288 N.E.2d 258, and *Berridge v. State, supra.*

We find no reversible error in the trial court's giving State's Instruction No. 9. Second Amended Count I of the information charged Brown, Reed, Byrne, and Gibbs with second degree arson. State's Instruction No. 9 is a correct statement of the law concerning the responsibility of a defendant for the acts of his confederates, even where conspiracy has not been charged. *See Banks v. State*, (1976) 265 Ind. 71, 351 N.E.2d 4, *cert. den.*, 429 U.S. 1077, 97 S.Ct. 821, 50 L.Ed.2d 797 (1977); *Atherton v. State*, (1967) 248 Ind. 354, 229 N.E.2d 239; *Liford v. State*, (1965) 247 Ind. 149, 210 N.E.2d 366, 213 N.E.2d 704.

Finally, Brown claims that a variance exists between the charge and the evidence in that the information alleges that the conspiracy occurred on August 21, 1974, whereas there was no evidence that Brown met with any of the co-conspirators prior to the fire on that date.

We observe, however, that Third Amended Count II actually alleges that the conspiracy occurred "*on or about* the 21st day of August A.D., 1974." (Our emphasis.) Thus, the information does not purport to charge that the conspiracy occurred entirely on that precise date. Furthermore, it was not necessary for the information to be more specific than this in order to support Brown's conviction for conspiracy. Where time is not of the essence of the offense and where the alibi statute has not been invoked, the offense charged may be proved as having occurred at any date within the statute of limitations and prior to the filing of the information. *Herman v. State*, (1965) 247 Ind. 7, 210 N.E.2d 249, *cert. den.*, 384 U.S. 918, 86 S.Ct. 1364, 16 L.Ed.2d 439 (1966).

*Issue Six*

Brown contends that the jury's verdicts were irrationally inconsistent in finding him not guilty of second degree arson under Count I and guilty of conspiracy to commit arson under Count II. He contends that the acquittal on the arson charge negates a conviction of conspiracy to commit the arson, thus requiring a reversal. We do not agree.

It is the general rule that the commission of a substantive offense and a conspiracy to commit the substantive offenses are separate offenses, and neither a conviction nor an acquittal of one is a bar to a prosecution of the other. 16 Am.Jur.2d *Conspiracy* § 37, at 248–49. This is true whether the conspiracy and the substantive offenses are charged in separate indictments or informations, or as separate counts of the same indictment or information. *Id.* at page 249.

In *Elmore v. State*, (1978) Ind., 382 N.E.2d 893, the defendants were convicted of theft and conspiracy to commit theft. Our Supreme Court held that the defendants could be sentenced for both offenses. In *Elmore, supra*, at page 898, Justice Pivarnik stated:

"* * * Proper resolution of the question of whether or not appellants may receive separate sentences for the two offenses, consistent with the Double Jeopardy Clause, requires a determination of whether theft and conspiracy to commit theft are the 'same offense.' . . The gist of the offense of conspiracy, Ind.Code § 35–1–111–1 (Burns 1975), is a criminal agreement of two or more persons, the object of which is the commission of a felony. It is not required that a felony actually be committed or even attempted. The offense of theft, on the other hand, is made out where a defendant knowingly obtains or exerts unauthorized control over property intending to deprive the owner of its use and benefit. Ind.Code § 35–17–5–3 (Burns 1975). Thus, the two offenses require proof of facts which the other does not. We therefore hold that the offenses of theft and conspiracy to commit theft are not the same offense and the trial court was correct in imposing separate concurrent sentences upon convictions of each. * * *" (Citations omitted.)

In *Collier v. State*, (1977) Ind.App., 362 N.E.2d 871, this court held that principles of double jeopardy did not prevent the defendant from being convicted of a violation of the Offenses Against Property Act and a

conspiracy to violate that act, although both offenses stemmed from the same conduct. Judge Lowdermilk, writing for this court, stated at page 874:

"* * * In other words Collier would have this court believe that since both of his convictions stem from the same prohibited conduct, he is being punished twice for the same offense. This argument is without merit.

The crime of conspiracy is a separate and distinct offense from the substantive felony which follows it. *Lane v. State* (1972), 259 Ind. 468 [288 N.E.2d 258]. In *Durke v. State* (1932), 204 Ind. 370 [183 N.E. 97], the Indiana Supreme Court held that prosecution for burglary did not bar prosecution of the same defendant for conspiracy to commit burglary. In light of these decisions, we hold here that one set of operative facts gave rise to two distinct offenses and that Collier was not subjected to multiple punishments for the same offense. . . ."

It seems clear from the foregoing authorities that Indiana has consistently followed the general rule that a prosecution for the substantive offense does not bar prosecution for conspiracy to commit the substantive offense. While we have found no Indiana cases deciding the precise question involved here, it has been held in other jurisdictions that acquittal of the substantive offense does not bar a prosecution for conspiracy to commit such offense. *United States v. Seelig*, (5th Cir. 1974) 498 F.2d 109; *State v. Thompson*, (1949) 241 Iowa 16, 39 N.W.2d 637; *Commonwealth v. Shea*, (1948) 323 Mass. 406, 82 N.E.2d 511; *State v. Westbrook*, (1954) 79 Ariz. 116, 285 P.2d 161; *Connelly v. State*, (1941) 30 Ala.App. 91, 1 So.2d 606; *Scarlett v. State*, (1953) 201 Md. 310, 93 A.2d 753, *cert. den.*, 345 U.S. 955, 73 S.Ct. 937, 97 L.Ed. 1377 (1953). In *Scarlett, supra*, at page 757, the court said:

"* * * But *it is beyond question that an acquittal of a particular crime does not bar a subsequent prosecution for conspiracy to commit the crime.* . . ." (Citations omitted.) (Emphasis added.)

Brown cites *United States v. Hannah*, (3rd Cir. 1978) 584 F.2d 27, as authority supporting his contention that the verdict acquitting Brown of arson is fatally inconsistent with the verdict convicting him of conspiracy and that such inconsistency mandates an acquittal on the conspiracy count. *Hannah, supra*, however, does not support the position taken by Brown. *Hannah* involved a conviction for the crime of facilitation under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 843(b) (1976). That statute made it a crime to knowingly or intentionally use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under the provisions of the act. In that case, Hannah was charged in Count I with conspiring to distribute heroin, and in Count III with using a telephone in committing and causing and facilitating the commission of the acts of distributing and possession with intent to distribute controlled substances and conspiracy to so distribute and possess controlled substances. Hannah was acquitted of the conspiracy charge and convicted of the facilitation charge. The district court entered a judgment n. o. v. acquitting Hannah of the facilitation count and the government appealed. The Third Circuit affirmed holding that the facilitation charge requires proof of the commission of an underlying felony, which was the conspiracy count in that case, and since Hannah was acquitted of the conspiracy charge, he could not be convicted of facilitation. The court said at page 30:

"* * * This case, however, presented to the jury on a very limited basis: that the 'acts constituting a felony' under § 843(b) in Count III were the very same acts that constituted the conspiracy alleged in Count I. Because the jury found Hannah not guilty of conspiracy, the felony relied upon by the government to satisfy the felony requirement of § 843(b), the government's case in Count III was insufficient as a matter of law. . . ."

What the *Hannah* case, *supra*, decided simply was that there could be no convic-

tion of facilitation where there was no underlying felony as required by the facilitation section of the statute. *Hannah* did not decide that acquittal of a charge of commission of a substantive felony is impermissibly inconsistent with a conviction of a charge of conspiracy to commit 'the substantive felony. Further, unlike the charge of facilitation which the court in *Hannah* held to require proof of an underlying felony, a charge of conspiracy under IC 35–1–111–1 does not require proof of the commission of the felony which was the subject of the conspiracy, nor does it require proof of an overt act toward the commission of the felony.[8] *Elmore v. State, supra; Hutcheson v. State,* (1963) 244 Ind. 345, 192 N.E.2d 748; *Lynn v. State, supra; Pierson v. State,* (1921) 191 Ind. 206, 131 N.E. 397.

Therefore, unless this case is within some recognized exception to the general rule, there is no fatal inconsistency in the verdicts requiring a reversal. It has been stated in some cases that although generally an acquittal on the substantive charge does not prevent conviction for conspiracy to commit the crime, that the contrary may be true where the necessary proof on the substantive charge is identical with that required for conviction on the conspiracy count. *United States v. Fassoulis,* (2nd Cir. 1971) 445 F.2d 13, *cert. den.,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 100 (1971); *United States v. Frank,* (2nd Cir. 1975) 520 F.2d 1287, *cert. den.,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); (in each of these cases, the court stated the rule, but found it inapplicable in the factual situation of the case.) Also, it has been held that the so-called "Wharton Rule," in cases where applicable, would make inconsistent verdicts on charges of conspiracy to commit the offense and of the offense itself impermissible. "Wharton's Rule" is an exception to the general rule and "applies only to offenses that *require*

concerted criminal activity, a plurality of criminal agents." *Iannelli v. United States,* (1975) 420 U.S. 770, 785, 95 S.Ct. 1284, 1293, 43 L.Ed.2d 616. In other words, the "Wharton Rule" says that if there must be two or more people involved in order to commit the substantive offense, and those persons are acquitted thereof, they cannot be convicted of a conspiracy to commit that crime.[9]

Neither of the factors which distinguish the exception stated in the *Fassoulis* and *Frank* cases, *supra,* or the "Wharton Rule" exception exist in this case. Second degree arson does not require a plurality of persons for its commission, and this negates application of the "Wharton Rule." Here, the necessary proof on the second degree arson charge is not identical to the proof required to substantiate the conspiracy charge. The arson charge requires proof of the commission of that felony, while the conspiracy charge requires only proof of the agreement. *Elmore v. State, supra.* Consequently, the exception delineated in *Fassoulis* and *Frank, supra,* has no application here. Since this case is not within either exception, the general rule must apply.

Brown also contends that the language of the second degree arson statute, IC 35–16–1–2, contains "conspiratorial language" in the words "or who aids, counsels or procures the setting of fire to or the burning, [etc.] . . . ." However, we again note that the arson statute requires the completion of the offense, whereas the conspiracy statute does not. Our prior discussion of the exceptions to the general rule is equally applicable to this contention of Brown which we find to have no merit.

*Issue Seven*

Brown complains that State's Instruction No. 4, given by the court over his objection, singled out the testimony of accomplices

---

**8.** IC 35–1–111–1 was replaced by IC 35–41–5–2, which requires proof of an overt act in furtherance of the agreement.

**9.** "The classic Wharton's Rule offenses—adultery, incest, bigamy, duelling—are crimes that are characterized by the general congruence of the agreement and the completed substantive offense. The parties to the agreement are the only persons who participate in the commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large. . . ." *Iannelli v. United States, supra,* 420 U.S. at 782–83, 95 S.Ct. at 1292.

and in effect told the jury that such testimony was to be given equal weight with that of other witnesses. That instruction states:

"A conviction may be sustained upon the testimony of admitted accomplices. The testimony of accomplices does not lack probative value as a matter of law, and their credibility and the weight to be given to their testimony are questions properly left to the jury."

Brown also argues that the instruction was improper in that the jury is not concerned with "sustaining" convictions.

Brown further contends that, having erroneously given State's Instruction No. 4, the trial court compounded the error by not giving either or both of Brown's Instructions Nos. 7 and 9. The result, he claims, was to deprive him of his defense. This, he says, amounts to fundamental, plain error. Brown's Instruction No. 7 provides:

"The State of Indiana had called witnesses in this case who have admitted criminal conduct and have admitted their guilt and conviction of a criminal conduct. You are instructed that the testimony of an admitted and convicted criminal should be carefully scrutinized and received and considered by you with caution."

Brown's Instruction No. 9 reads as follows:

"Co-defendants Joseph Byrne and Raymond Reed have testified in this case and have stated that the State of Indiana, as consideration for their testimony and their cooperation, has agreed to dismiss some of the charges pending herein against them and to reduce to lesser offenses other charges pending against them herein and to grant them leniency.

I instruct you that the testimony of an accomplice or co-conspirator who has been induced or encouraged to testify in exchange for leniency, rewards or other favors is highly suspect and such testimony should be cautiously received and highly scrutinized by you, the jury."

The State argues that Brown's Instructions Nos. 7 and 9 would constitute an invasion of the province of the jury because they imply that less weight is to be given to the testimony of accomplices than is to be given to testimony of other witnesses.

In *Tippett v. State*, (1980) Ind., 400 N.E.2d 1115, 1118, the Supreme Court considered the following instruction:

" 'An accomplice is one who, with criminal intent, acts with others and participates in the commission of a crime. Under the laws of the State of Indiana, an accomplice is competent as a witness for the state in the trial of a criminal case. The evidence of an accomplice is to be received and weighed by the jury in the same manner and according to the same rules as the evidence of any other witness.' "

The Supreme Court held that it was not error to give that instruction because the instruction did not imply that the testimony of an accomplice is on a different plane from that of other testimony.

In light of *Tippett, supra*, we hold that State's Instruction No. 4 was properly read to the jury. Brown's assertion that the use of the term "sustained" renders the instruction improper is without merit. We do not believe that a jury of laymen would be confused by the use of that term, although, technically, an appellate court is the body which sustains or reverses convictions. As our Supreme Court has said, "[i]n construing the correctness of instructions it has been the practice of this court to disregard clerical mistakes or verbal inaccuracies which do not confuse the jury." *Eastin v. State*, (1954) 233 Ind. 101, 105, 117 N.E.2d 124, 126; accord, *England v. State*, (1968) 249 Ind. 446, 233 N.E. 168.

In *Turner v. State*, (1972) 258 Ind. 267, 271, 280 N.E.2d 621, 624, the Supreme Court examined the following tendered instruction which had been refused by the trial court:

" 'The testimony of an accomplice should be cautiously received and carefully scrutinized by the jury, and weighed by the jury according to its credibility.' "

The Supreme Court held that the trial court properly refused that instruction because it

invaded the province of the jury by commenting on the weight to be given to testimony of a particular witness. *Accord, Cherry v. State,* (1972) 258 Ind. 298, 280 N.E.2d 818.

Brown believes that the Supreme Court indicated in *Newman v. State,* (1975) 263 Ind. 569, 334 N.E.2d 684, that the old suspicion of accomplice testimony persists, notwithstanding the earlier decisions in *Turner, supra,* and *Cherry, supra.* However, a closer examination of *Newman, supra* reveals that no jury instruction like those in *Turner* and *Cherry* was questioned in that case. Rather, the Supreme Court's remarks about the suspicious nature of accomplice testimony were made in its discussion of the inadvertent failure of the State to disclose evidence concerning an agreement of leniency between the State and one of its witnesses. The Court's concern was that the jury, as the trier of fact, "should have before it all the relevant circumstances that caused or induced such witness to testify, including the rewards for such testimony." 263 Ind. at 572, 334 N.E.2d at 687.

We held earlier that State's Instruction No. 4 was properly given in light of *Tippett, supra.* On the other hand, Brown's Instructions Nos. 7 and 9, like those in *Turner, supra,* and *Cherry, supra,* are unduly suggestive concerning the weight to be given to the testimony of particular witnesses. Furthermore, the plea agreements between the State and Byrne and Reed were thoroughly disclosed to the jury in both the testimony of those witnesses and the arguments of counsel. Consequently, we hold that the trial court properly refused to read to the jury Brown's Instructions Nos. 7 and 9.

*Issue Eight*

Brown contends that the trial court erroneously overruled his objection to State's Instruction No. 10, which says, "Competency is a matter for the Court to determine. Credibility is a matter for the jury to determine based on all the evidence in light of the other instructions." Brown argues that the instruction violates Article I, § 19 of the

Constitution of Indiana, which provides that "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts." He maintains that the jury was, in effect, told in State's Instruction No. 10 that the court had already determined Raymond Reed's ability to distinguish between fact and delusion and that the jury need not be concerned with Reed's competency in the sense of his mental condition. Brown says that the trial court should not have mentioned to the jury that it had decided the question of Reed's competency and that, having done so, it further committed gross error in not including the words "to testify" after "competency" in the instruction.

We agree with Brown that it would have been better if the trial court had not instructed the jury with regard to the court's role in determining the competency of a witness to testify. However, we cannot say that Brown has been prejudiced by State's Instruction No. 10.

In the first place, the instruction as given is a correct statement of the law. *See Kimble v. State,* (1974) 262 Ind. 522, 319 N.E.2d 140. In *Martin v. State,* (1969) 251 Ind. 587, 244 N.E.2d 100, the trial court had ruled that a five-year-old child was competent to testify in the prosecution of her alleged assailant. In affirming the trial court's ruling, our Supreme Court made the following comment on the effect of questions asked a witness after the trial court has ruled the witness competent:

"On the other hand, questions put after the trial court's ruling, especially questions on the merits, cannot be used to undermine the ruling of competency. They go to the credibility of the witness and influence the weight to be given to that testimony by the trier of fact. The qualification of the child as competent does not imply she will be a model witness, nor does it imply that her testimony will be supported by the other evidence, nor does it imply she will be able to faithfully recall the events which occurred when she was four years old. None of those issues bears on her *compe-*

*tency* as a witness. An adult witness is not rendered incompetent because he makes inconsistent statements or has a suspected faulty memory. The statutory presumption of incompetence is overcome when the child demonstrates an understanding of 'the nature and obligation of an oath' and there is no further test." (Original emphasis.)

251 Ind. at 593, 244 N.E.2d at 103. Thus, competency, as used here, is to be determined by the court prior to the witness's taking the stand. After the court determines that the witness is competent, any evidence introduced which reflects on the witness's mental condition or ability goes to the witness's credibility.

Secondly, we do not believe that a jury of laymen would be misled by the distinction between "competency" and "credibility." The jury heard ample testimony by Dr. Bilgutay and by Reed himself concerning the nature of Reed's psychological problems. We think the jury naturally would have assumed that this testimony was to be considered by them in deciding whether Reed was a credible witness.

We find no reversible error in State's Instruction No. 10.

Judgment affirmed.

ROBERTSON, P. J., and NEAL, J., concur.