**Mark SMITH, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 483S141.**

Supreme Court of Indiana.

July 12, 1984.

Rehearing Denied Aug. 30, 1984.

James R. Cotner, Cotner, Mañn & Chapman, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Mark Smith, was convicted by a jury of attempted murder, a Class A felony, Ind.Code §§ 35–41–5–1, 35–42–1–1(1) (Burns 1979 Repl.). He was sentenced to the Indiana Department of Correction for a term of thirty years. He raises the following three issues in this direct appeal:

1. Whether it was reversible error to overrule the defendant's motion to dismiss

based upon the allegedly inadequate charging information;

2. Whether it was reversible error to admit into evidence a tape recording of the victim's statement to police; and

3. Whether defendant was denied the effective assistance of counsel.

A brief summary of the facts from the record most favorable to the state shows that on June 14, 1982, Diana [Smith] Jackson was separated from her husband, the defendant, and was living with her parents in Bloomfield, Indiana. Diana was nineteen years old and had custody of the couple's nine-month old son. She was a student at Ivy Tech in Bloomington, Indiana. On June 14, defendant called Diana at her parents' home and explained he would be late making his support payment that week. He also asked whether their joint checking account had been closed and whether they had to have a final hearing on the dissolution proceedings. Diana hung up on him. Defendant then went to the parking lot of Diana's school and waited for her. When he saw her drive in, he approached the car and opened the door on the driver's side. He asked her about the clothes she was wearing and why she wasn't wearing her wedding ring.

Defendant then choked Diana until she lost consciousness. When she regained consciousness, defendant apologized and asked her to go someplace where they could talk. Diana refused and defendant choked her again. Diana said, "Mark, you're going to kill me," and defendant responded, "That's right, I'm going to kill you." Diana pretended to lose consciousness again, and when defendant stopped choking her, she got out of the car and ran. Defendant ran after her and stabbed her several times in the back with a kitchen knife. Diana tripped and fell and defendant stabbed her several more times in the side and chest. Some bystanders pulled defendant away from Diana and defendant said they might as well kill him, too. Police arrested defendant at the scene. Diana suffered six stab wounds and a collapsed lung and required emergency sur-

gery to stop internal bleeding. She gave a statement to police at the hospital.

## I.

Defendant first contends that the trial court erred in denying his motion to dismiss because the charging information did not adequately set out the necessary elements of the crime of murder. He argues that the information did not state that the acts of defendant were done with the intent to kill the victim and therefore omitted an essential element of the crime of murder. The information stated in relevant part:

> "that Mark E. Smith on or about the 14th day of June, 1982, at and in said County and State aforesaid did attempt to commit the crime of murder by knowingly striking, cutting and stabbing at and against the body of Diana Smith with a knife, then and there held in the hands of the said Mark E. Smith, which conduct constituted a substantial step toward the commission of said crime of murder."

█ It is well settled that an information must state the crime in words of the statute or words that convey a similar meaning. However, the exact words of the statute need not be employed. *Smith v. State,* (1983) Ind., 445 N.E.2d 998; *Askew v. State,* (1982) Ind., 439 N.E.2d 1350; *Brown v. State,* (1980) Ind.App., 403 N.E.2d 901. The accused must be sufficiently apprised of the nature of the charges against him so that he may anticipate the proof and prepare a defense in advance of trial. Ind. Const. art. 1, § 13; Ind.Code § 35-34-1-2 (Burns 1984 Supp.); *Head v. State,* (1982) Ind., 443 N.E.2d 44. Minor variances from the wording of a statute do not make an information defective so long as the words, construed according to their common usage, do not mislead the accused or do not omit an essential element of the crime. *Johnson v. State,* (1983) Ind., 455 N.E.2d 932; *Williams v. State,* (1979) 271 Ind. 656, 395 N.E.2d 239; *Brown v. State,* 403 N.E.2d at 908.

█ Here the language in the information stated that defendant was charged

with attempting to commit "the crime of murder." While it would be preferable for an information for attempted murder to contain the phrase "knowingly or intentionally kills another human being," the common meaning of the word "murder" is to intentionally kill another human being. The intentional element was also covered here by the language "by knowingly." The information set out the specific acts of "striking, cutting and stabbing" with a knife which were the substantial steps necessary to prove the attempted murder. Defendant does not show that he was actually misled by the phraseology employed. We find the language in the information was sufficient to charge defendant with attempted murder and did satisfy the requirement that defendant be informed of the nature and cause of the charge against him.

## II.

Defendant next contends that it was reversible error to admit into evidence a tape recording of the victim's statement to police which she gave in the hospital immediately following the incident. He argues that this recording was highly prejudicial to him because of the background sounds of the emergency room and the "urgency" in the voices of the deputy and the nurses as they tried to make sure that the victim stayed awake to answer the questions. He also contends that the taped statement was hearsay since it was not specifically identified by the victim.

The record shows that the victim did testify that she gave a short statement to the police while she was first being treated in the hospital emergency room. She also testified about what she had told the police at that time. The recorded statement was less than three minutes long and essentially covered her identification of defendant as the person who stabbed her and the fact that he was unhappy about their divorce. One of the hospital nurses testified that the victim was being given a blood transfusion but was not being given any medication at the time she gave the statement.

It is well settled that the *Patterson* rule allows the use of the prior out-of-court statements of a declarant who is present and available for cross-examination as substantive and not merely impeaching evidence. *Watkins v. State,* (1983) Ind., 446 N.E.2d 949; *Lewis v. State,* (1982) Ind., 440 N.E.2d 1125; *Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482.

■ Here, the victim's extrajudicial statement was properly admitted as substantive evidence. She had been interrogated concerning the subject matter of the statement and had been subjected to cross-examination. It was not necessary for the victim to specifically identify the tape at the time it was introduced since it was properly identified by the police officer who had recorded it and the victim had previously testified about this statement. The subject matter was relevant to show the victim's immediate reactions to the crime, her identification of defendant at that time, and her assessment of defendant's motives for the attack.

■ It is well settled that evidence which throws or tends to throw light on the guilt or innocence of a defendant is relevant. The trial court has wide latitude in ruling on the admissibility of evidence and in determining its relevancy. *Grimes v. State,* (1983) Ind., 450 N.E.2d 512; *White v. State,* (1981) Ind., 425 N.E.2d 95. Relevant evidence is not inadmissible merely because it is prejudicial. *Bryan v. State,* (1983) Ind., 450 N.E.2d 53; *Meredith v. State,* (1966) 247 Ind. 233, 214 N.E.2d 385. The victim's tape-recorded statement here was relevant and was admissible as substantive evidence. There was no error.

## III.

■ Defendant finally contends that he was denied effective assistance of counsel because his counsel failed to raise the defense of insanity. The record shows that defendant was examined by a psychologist, Dr. Widom, who was the head of the forensic department at Indiana University. Dr. Widom talked with defendant three differ-

ent times for a total of about ten hours. The doctor concluded on the basis of test results and her interviews with defendant that he was sane. Defendant admits that he and his counsel discussed the possibility of having other evaluations and decided that it wouldn't do any good in light of Dr. Widom's conclusions and the fact that court-appointed psychiatrists would not spend as much time with defendant as Dr. Widom had. Defendant also admits that his counsel discussed the possible defenses and alternative strategies with him and that together they decided not to put on a defense of insanity but to try to get a verdict on a lesser included offense. Regarding competency of counsel, it has been more than frequently stated by this Court that there is a presumption that counsel is competent and that strong and convincing evidence is required to rebut the presumption. *Howell v. State*, (1983) Ind., 453 N.E.2d 241; *Lindley v. State*, (1981) Ind., 426 N.E.2d 398; *Rinard v. State*, (1979) 271 Ind. 588, 394 N.E.2d 160. Incompetency of counsel revolves around the particular facts of each case; the requirement is one of adequate legal representation which has been thoroughly explained in recent cases of this Court and the United States Supreme Court. *Strickland v. Washington*, (1984) —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lawrence v. State*, (1984) Ind., 464 N.E.2d 1291. This Court will not speculate as to what may have been the most advantageous strategy in a particular case. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffective counsel unless, taken as a whole, the defense was inadequate. *Hollon v. State*, (1980) 272 Ind. 439, 398 N.E.2d 1273.

Here, the record shows that counsel made a reasonable investigation of the possibility of an insanity defense. He discussed alternative strategies with defendant and presented a reasonable case calculated to obtain a verdict on a lesser included offense. Defendant himself testified to show the mitigating circumstances, including the fact that he had been a good father and had no prior criminal history. We do not find, from the evidence presented, that counsel's representation was inadequate. There was no error here.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result with opinion.

PRENTICE, Justice, concurring in result.

I concur in the result reached by the majority.

With respect to Issue I, the question is similar to the one addressed in *Smith a/k/a Watford v. State*, (1984) Ind., 459 N.E.2d 355, which we reversed (Givan, C.J. and Pivarnik, J. dissenting) upon a faulty instruction which was as follows:

"STATE'S INSTRUCTION NO. 3

You are instructed that the essential elements of the crime of attempted Murder which the State of Indiana must prove beyond a reasonable doubt are the following:

1. That the Defendent (sic) knowingly,

2. Engaged in conduct that constituted a substantial step toward the commission of Murder."

I believe, however, that the information was adequate not because the word "murder" implies intent but because the word "attempt" implies an intent to accomplish a particular result. The information, therefore, would have been adequate had the word "knowingly" been omitted.

Upon Issue II, the evidence was not admissible under *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482 and other cases cited by the majority. The Patterson Rule is not so much a rule for determining the admissibility of hearsay as it is one for determining the use of such evidence, as substantive evidence, once it has been ad-

mitted under some exception to the hearsay rule. *Samuels v. State*, (1978) 267 Ind. 676, 678–79, 372 N.E.2d 1186, 1187; *Smith v. State*, (1983) Ind., 446 N.E.2d 949, 959, 60. "To the extent that it [*Patterson*] has ... been used to support the admission of out-of-court statements as a mere substitute for available in-court testimony, it has been misapplied." *Samuels*, 267 Ind. at 679, 372 N.E.2d at 1187. The evidence was improperly admitted, but I believe that Defendant was not harmed by its admission.