UNITED STATES of America,
Plaintiff-Appellee,

v.

William Edward LINDSEY,
Defendant-Appellant.

No. 78–2016.

United States Court of Appeals,
Seventh Circuit.

Argued April 12, 1979.

Decided July 27, 1979.

Michael C. Keating, Evansville, Ind., for defendant-appellant.

George E. Palmer, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, SWYGERT and BAUER, Circuit Judges.

SWYGERT, Circuit Judge.

■ A jury convicted defendant of conspiring "to receive, conceal, sell and dispose of stolen motor vehicles" in violation of 18 U.S.C. §§ 2313 and 371. The indictment charged defendant and eight others of one overall conspiracy whereas the evidence adduced at trial showed that defendant was involved only in a smaller, separate conspiracy. The question for our consideration is whether this variance between indictment and proof requires reversal. Because there is a significant possibility that defendant was prejudiced by this error, we reverse.

The evidence showed a theft-on-order operation principally involving motor vehicles and motor vehicle parts. One group of indicted defendants constituted the conspiratorial "core" which would steal and deliver motor vehicles desired by another group of indicted defendants. Defendant allegedly is a member of the latter category, a purchaser of stolen motor vehicles. Such an operation can be conceptualized as a hub and spokes, with the core conspirators at the hub and the purchasing conspirators at the end of the spokes. Since the Government did not prove that any of the purchasers were aware of the existence of any other purchasers, there would be no rim connecting the ends of the spokes.

The four defendants at or near the hub (Browning, Bodell, Pointer, and Hunter) all pleaded guilty to the conspiracy count, as did two of the purchasers (Claycomb and Lewis). The case against a third purchaser (Harrell) was dismissed by the court at the close of the Government's evidence. There remained for the jury to consider only the participation in the conspiracy of indicted defendant Caldwell, who stripped vehicles for the core defendants, and defendant Lindsey, the fourth indicted purchaser and appellant in this appeal.

At trial defendant testified on his own behalf that he did not know that the dump truck and bulldozer he had purchased from the core defendants were stolen or that the tri-axle truck, which he requested but then decided not to buy, was stolen. This testimony was contradicted by the testimony of some of the codefendants as well as by evidence that the ignitions on all three vehicles had been "pulled" and that none of the vehicles possessed any ownership papers.

■ On appeal defendant does not argue that the evidence against him was insufficient to sustain a conviction of conspiracy to steal motor vehicles. Rather he argues that the evidence does not prove the overall conspiracy charged in the indictment. We agree that each arrangement between the core and a purchaser for the delivery of stolen vehicles constituted a sep-

arate conspiracy because there was no evidence that any purchaser knew of the existence of any other purchaser or had an interest in the successful delivery of stolen vehicles to other purchasers. The parties to a conspiracy must at least know of the existence (though not necessarily the identity) of coconspirators and must share a common purpose with these known coconspirators. These two requirements of an agreement, which have been termed the party dimension and the object dimension, have not been met here with respect to an overall conspiracy. *United States v. Varelli,* 407 F.2d 735, 742–43 (7th Cir. 1969); *see generally* Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920, 927–33 (1959).

■ Our conclusion that defendant could only have been a member of a smaller conspiracy consisting of himself and the core and having the more limited objective of stealing and delivering the particular vehicles desired by him does not necessitate reversal unless defendant was prejudiced by the erroneous presentation of the case to the jury on an overall conspiracy charge.

In *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the Supreme Court held that a variance between an indictment charging five defendants with a single conspiracy and proof of two separate conspiracies with a common figure (other than defendant) was harmless error since the defendant was not surprised by the evidence introduced against him or subjected to the possibility of another prosecution for the same offense as a result of the error. 295 U.S. at 82, 55 S.Ct. 629. In *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the indictment charged thirty-two defendants with a single conspiracy whereas the proof showed eight separate conspiracies with a common figure other than defendant. Here the Supreme Court held that the variance was prejudicial error because of "[t]he dangers of transference of guilt from one [defendant] to another across the line separating conspiracies." 328 U.S. at 774, 66 S.Ct. at 1252. *Berger* was distinguished on the

ground that the small number of conspirators and conspiracies there involved reduced the likelihood of jury confusion. 328 U.S. at 766, 66 S.Ct. 1239. In *Blumenthal v. United States,* 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947), Mr. Justice Rutledge, who had also written the *Kotteakos* opinion, held that a variance between an indictment charging a single conspiracy among five defendants and arguable proof of two separate conspiracies was harmless error where the jury had been instructed not to consider certain evidence (admissions of two defendants of the existence of a hitherto undisclosed additional conspirator) relating to a separate conspiracy of which defendant was not a part.

■ Thus the Supreme Court has looked to the following factors to determine whether this type of variance is prejudicial: (1) surprise to the defendant resulting from the variance, (2) possibility of subsequent prosecution for the same offense, (3) likelihood of jury confusion as measured by the number of conspirators charged and the number of separate conspiracies proven, and (4) likelihood of jury confusion in light of the instructions given the jury limiting or excluding the use of certain evidence not relating to the defendant. Defendant Lindsey candidly admits that application of the first three factors in this case does not point toward a finding of prejudice, but argues that he was entitled to an explicit instruction precluding jury consideration of evidence relating to theft-on-order conspiracies other than the one in which he was involved.

■ In *United States v. Johnson,* 515 F.2d 730 (7th Cir. 1975) (Stevens, J.), we stated:

[W]here, at the close of testimony, it is clear, as here, that a jury could not find a single overall conspiracy as a matter of law, the defendant is not only entitled to a multiple conspiracies instruction but also to an instruction that evidence relating to the other conspiracy or conspiracies disclosed may not be used against him under any circumstances.

*Id.* at 733–34, n. 10. The evidence presented by the Government in the instant case was insufficient to prove the overall conspiracy charged in the indictment. Nevertheless, the trial court failed to tender any jury instructions regarding either multiple conspiracies or the jury's responsibility to disregard evidence introduced by the Government relating to conspiracies defendant was not involved in. This failure constituted "plain error." *Id.* at 733–34. The only remaining question is whether this error affected, "substantial rights" of the defendant. *Kotteakos, supra,* 328 U.S. at 765, 66 S.Ct. 1239.

■ The Supreme Court in *Kotteakos* articulated the standard for determining whether an error like this is grounds for reversal:

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Id.* at 765, 66 S.Ct. at 1248. And although the Supreme Court in *Blumenthal* held that specific limiting instructions could make the erroneous submission of a case to a jury on a single conspiracy theory harmless error, no such specific instructions were tendered by the trial court in this case.

The specific admonitions of the limiting instructions in *Blumenthal* stand in sharp contrast to the general, almost "boiler plate" instructions tendered in the instant case. The trial court in *Blumenthal* specifically said to the jury, " '. . . the statements made by the defendants Goldsmith and Weiss to the witness Harkins could only be considered by you as against those two named defendants.' " *Id.* 332 U.S. at 552, n. 10, 68 S.Ct. at 252, n. 10. As the Supreme Court observed:

> [T]he trial court's rulings, both upon admissibility and in the instructions, leave no room for doubt that the admissions were adequately excluded, insofar as this could be done in a joint trial, from consideration on the question of their guilt. The rulings told the jury plainly to disregard the admissions entirely, in every phase of the case, in determining that question. The direction was a total exclusion, not simply a partial one . . . .

*Id.* at 551–53, 68 S.Ct. at 254. The instructions regarding admissibility tendered in the instant case are not only vague, but they are also conditional; they certainly do not remove all "doubt that the admissions were adequately excluded." *Id.* Instruction No. 25, which included some general warnings about admissibility, also stated:

> But if you find from the evidence beyond a reasonable doubt that the alleged conspiracy was formed and existed and that two or more of the alleged conspirators were members thereof, then the alleged acts or omissions thereafter, if any, knowingly done, and the statements thereafter, knowingly made, if any, by any member of the alleged conspiracy, may be considered by you as evidence in the case as to any of the other members of the alleged conspiracy, even though such acts and omissions and statements may have occurred in the absence and without the knowledge of such others, provided such acts or omissions and statements were knowingly done, omitted or made during the continuance of such conspiracy before its termination and in furtherance of the alleged object or purpose of the alleged conspiracy. (Tr. 686.)

And Instruction No. 37 added:

> If you find in accordance with these instructions that some other person who is not on trial was actually implicated in committing the alleged offense before, during or after its alleged commission, then I instruct you that such may be considered by you together with all of the evidence, in determining the guilt or innocence of a defendant. (Tr. 708.)

Thus, although, as a matter of law, a single, overall conspiracy could not be inferred from the evidence presented at trial, the jury was not prohibited from reaching that conclusion and using evidence pertaining to a theft-on-order agreement defendant was not part of and had no knowledge of in making its determination about defendant's guilt.

The evidence from the theft-on-order agreements which defendant was not involved in could have been extremely prejudicial. Defendant's defense at trial was that he did not know that the vehicles he had purchased were stolen. Two codefendant-purchasers (who had pleaded guilty) testified for the Government and said that they knew that the vehicles they had purchased from the core conspirators had been stolen, thereby undermining the credibility of defendant's defense. This evidence, although pertaining to conspiracies defendant was not a part of, may have contributed substantially to the guilty verdict against him. The trial court "should have told the jury unequivocally that the evidence relating to the [other conspiracies] was not to be considered against appellant." *Johnson, supra,* 515 F.2d at 736. *See also Blumenthal, supra,* 332 U.S. at 551–53, 68 S.Ct. 248. In this case, "[b]oth the quality and the character" of the evidence from the other conspiracies "unquestionably increased the likelihood that the jury would find appellant guilty of conspiracy. . . ." *Johnson, supra,* 515 F.2d at 734.

We are "left in grave doubt" that defendant's criminal conspiracy conviction "was not substantially swayed" by the trial court's error. *Kotteakos, supra,* 328 U.S. at 765, 66 S.Ct. 1239. Accordingly, appellant's conviction is reversed.

CASTLE, Senior Circuit Judge, dissenting.

I agree with the majority's conclusion that on the basis of the evidence presented at the trial, the jury could not, as a matter of law, have found the single overall conspiracy charged in the indictment. In such a situation, our holding in *United States v.*

*Johnson, supra,* requires both a multiple conspiracies instruction and an instruction that evidence relating to other conspiracies may not be used against defendant under any circumstances. The trial judge here did not give the jury either instruction and this was error. However, contrary to the majority, I believe that this error was rendered harmless by the limiting instructions on the use of the evidence that the trial judge did give the jury.

The trial judge did not in so many words instruct the jury not to consider evidence relating to other conspiracies, but he did caution the jury to "leav[e] out of consideration entirely any evidence pertaining to the other defendant" and to consider only defendant's "own connection with the action and conduct of others." (Tr. 703 and 684). It is hard to see how the judge could have been much more explicit short of actually instructing the jury on the existence of separate conspiracies, so the thrust of defendant's argument must be that it was prejudicial error for the judge not to submit the case to the jury on a multiple conspiracy theory. But the whole point of *Blumenthal, supra,* is that the error of submitting a case to a jury on a single conspiracy theory can be rendered harmless by a limiting instruction. In *Blumenthal,* the jury was specifically directed not to consider an admission by Goldsmith and Weiss in determining the participation in the conspiracy of Blumenthal, Feigen and Abel because the admission linked Goldsmith and Weiss to a separate conspiracy in which there was no evidence of involvement by the other three defendants. The instruction was held to adequately protect Blumenthal from prejudice even though the jury had been presented with evidence (the admissions) from a separate conspiracy in which he was not proved to have been involved. In *United States v. Johnson, supra,* we held that the error of submitting a case to the jury on a single conspiracy theory when two conspiracies were proved was prejudicial, but in that case there was no instruction limiting or excluding the use of certain evidence by the jury.

Given that submission to the jury of a multiple conspiracy case on a single conspir-

acy theory is not *per se* prejudicial error, the question is whether the instructions tendered in this case were adequate to render the error harmless.

The jury was instructed:

In considering whether or not a defendant and any other particular party to the alleged conspiracy was a member of the specific conspiracy charged . . ., you must do so without regard to and independently of the statements and declarations of others. That is, you must determine the membership of a particular defendant from the evidence, if any, concerning his own actions, his own conduct, his own declarations, or his own statements, and his own connection with the action and conduct of others. . . . (Instruc. # 25, Tr. 683–84).

You are not to consider what one person may have said or done in concluding whether or not another person was a member of the conspiracy partnership; his membership must be established by evidence as to his own conduct, what he himself said or did in becoming a member. (Instruc. # 25, Tr. 686).

[G]ive separate, personal consideration to the case of each of the defendants . . analyze what the evidence shows with respect to each defendant, leaving out of consideration entirely any evidence pertaining to the other defendant. Each is entitled to have his case determined from his own acts and statements and the other evidence in the case which may be applicable to him. (Instruc. # 34, Tr. 703).

These instructions are not substantially different from the saving instruction in *Blumenthal* telling the jury to disregard the admissions of two conspirators which related to a conspiracy other than the one with which Blumenthal was charged. The fact that the inadmissible evidence in the present case was not specifically delineated by the court for the benefit of the jury as it was in *Blumenthal* is not prejudicial in the circumstances of this case. First, because the very structure of a theft-on-order operation involves each purchaser in a separate arrangement with the core, and because this is evident on a common sense level—regardless of whether these separate arrangements are recognized to be separate conspiracies or not—instructing a jury to consider only the evidence relating to defendant and to leave out of consideration entirely any evidence pertaining to the other defendant is substantially the same as an instruction not to consider evidence from other conspiracies. This result would obtain only where the conspiracies are structurally separate, as in a hub and spokes operation, in contrast to the situation where there are separate conspiracies as a result of a failure of proof, as may have been the case in *Blumenthal*.[1] Second, far from suffering prejudice, defendant may have benefited from his joint trial with Caldwell, as his own lesser involvement as a purchaser would stand in contrast to Caldwell's comparatively greater involvement as a dismantler or stripper of vehicles. This view of the case is supported by the fact that defendant never requested a severance of his trial from that of Caldwell.

In sum, the jury instructions explaining what evidence was relevant to defendant's participation in a motor vehicle theft conspiracy were sufficient, in the circumstances of this case, to render harmless the error of submitting the case to the jury on a single conspiracy theory. The conviction of defendant Lindsey on the conspiracy count should, therefore, be affirmed.[2]

---

1. It is possible that Blumenthal, Feigen, and Abel also knew of the existence of the undisclosed owner of the whiskey being sold above the OPA price ceilings, in which case there would have been one overall conspiracy, but the Government never proved such knowledge on their part.

2. Defendant was sentenced to serve 6 months in prison, with the balance of his 3-year term being suspended. (Defendant's Br. at A–9).