UNITED STATES of America,
Plaintiff-Appellee,

v.

Steven AUSTIN, Defendant-Appellant.

No. 85–2138.

United States Court of Appeals,
Fifth Circuit.

Oct. 16, 1985.

Roland E. Dahlin, II, Federal Public Defender, Marjorie A. Meyers, Asst. Federal Public Defender, Houston, Tex., for defendant-appellant.

Henry K. Oncken, U.S. Atty., James R. Gough, Asst. U.S. Atty., Vincent L. Gambale, Maury Epner, Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before WISDOM, POLITZ and TATE, Circuit Judges.

WISDOM, Circuit Judge:

On this appeal from a criminal conviction the defendant argues that there was a prejudicial variance between the conspiracy charged in the indictment and the proof adduced at trial. We hold that the district court remedied any possible unfairness to the defendant by issuing curative instructions to the jury and by striking the prejudicial evidence that was introduced. The judgment is affirmed.

### I.

The defendant, Steven Austin, was charged in a lengthy indictment with one count of conspiring to file false tax returns in violation of 18 U.S.C. § 286, seven counts of making false claims for tax refunds in violation of 18 U.S.C. § 287, one count of theft of public money in violation of 18 U.S.C. § 641, and nine counts of mail fraud in violation of 18 U.S.C. § 1341. Also named as defendants were Austin's accountant, Jose Cantu, and his accountant's secretary, Shirley Fontenot. The thrust of the indictment was that Austin, Cantu, and Fontenot had combined to file false claims for tax refunds in the names of Steven Austin, Shirley Fontenot, and four other individuals whose names and social security numbers were used without their knowledge. Austin's trial was severed from the trial of his codefendants because Austin and Cantu were expected to rely on antagonistic defenses.

Austin filed false tax returns in October 1982 for the years 1980 and 1981, claiming refunds totaling $46,237. He received a check for $27,282 in November 1982, which was the amount he claimed as a refund in his 1981 return. Austin was entitled to no refund in either 1980 or 1981. At trial, he admitted that his returns for those two years were false, but contended that he was not criminally responsible because he relied in good faith on his accountant to fill out his tax forms. Austin denied that he was involved in a conspiracy with either Cantu or Fontenot to file any false returns.

The government introduced as evidence Austin's returns for 1980 and 1981. In addition, the 1981 returns filed in the names of Shirley Fontenot and the four unwitting individuals were admitted into evidence. At the close of the government's case-in-chief, the district court found that the government had produced no evidence to link Austin to the false returns filed by Fontenot or the other four persons. The court dismissed the 12 counts in the indictment that were related to those returns. The judge refused to dismiss the six remaining counts in the indictment. The conspiracy charge was narrowed to include only the conspiracy between Austin and Cantu to file two false claims on behalf of Austin. The five other counts were: two counts of making false claims for tax refunds, two counts of mail fraud, and one count of theft of public money.

At the close of the defendant's case, the district court denied the defendant's motions for a judgment of acquittal and for a new trial. The case went to the jury, which found the defendant guilty on all six counts. The court again denied the defendant's motions for a judgment of acquittal

and for a new trial. Austin then filed this appeal.

The defendant has raised three issues. The first, and the one on which he relies most heavily, is his contention that he was unfairly prejudiced by the variance between the charges in the indictment and the evidence adduced at trial. He argues that the evidence relating to the dismissed counts was erroneously admitted and prejudicial. Austin's second argument is that the prosecutor improperly elicited testimony from the defendant's ex-wife that he mistreated her and possibly killed her father. The defendant contends that this testimony was inflammatory and highly prejudicial to him. The defendant's third argument is that the trial judge erroneously denied the jury charges he requested concerning ignorance of the law and fraudulent intent. We find his arguments unpersuasive.

## II.

### A. *Variance*

■ The defendant maintains that the variance between the broad conspiracy alleged in the indictment and the narrow conspiracy proved at trial substantially prejudiced his case, and necessitates a reversal. Inevitably, he relies on *Kotteakos v. United States*, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, and its progeny, *see e.g., United States v. Lindsey*, 7 Cir. 1979, 602 F.2d 785. Those cases established the principle that when one large conspiracy is charged and several smaller ones are proved, the variance may be reversible error because of the "dangers of transference of guilt from one [defendant] to another across the line separating conspiracies". *Kotteakos*, 328 U.S. at 774, 66 S.Ct. at 1252.

The present case differs from *Kotteakos* and *Lindsey* in one significant respect. In *Kotteakos* and *Lindsey,* the trial judge did not narrow the general conspiracy charge to conform to the proof at trial. The jury was allowed to consider the broad conspiracy even though there was no evidence to show that the defendant had participated in

it. The danger of transference of guilt from one defendant to another unrelated defendant was very real. In the present case, however, the trial judge limited the conspiracy charge to the agreement between Austin and Cantu to file two false returns on behalf of Austin. The judge instructed the jury not to consider any other agreement to file false tax returns or the alleged participation of Fontenot. These instructions and the careful delimitation of the conspiracy charge submitted to the jury removed any danger of transference of guilt. This case is analogous to *Blumenthal v. United States*, 1947, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154, in which the Court held that the trial judge's instruction to the jury to disregard the evidence of a separate conspiracy in which the defendant did not participate was sufficient to overcome a variance between the indictment and the proof.

■ The defendant raises a second issue in pressing his variance argument. He claims that as a result of the variance, evidence relating to the dismissed counts was admitted that severely prejudiced his case. The evidence consisted of five false tax returns and two bait letters, all of which were unrelated to the conspiracy between Austin and Cantu to file two false claims on behalf of Austin. The defendant argues that the evidence was admitted in violation of *United States v. James*, 5 Cir. 1978, 590 F.2d 575 (en banc), *cert. denied,* 1979, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283, because the trial judge did not first determine whether the broad conspiracy charged in the indictment existed. The *James* case established the standard and procedure for the admission of coconspirator hearsay statements. There was no *James* problem in this case, however, because the evidence admitted—the tax returns and letters—was not hearsay. Under Federal Rule of Evidence 801, the returns and letters were "written assertions" and therefore "statements", but they were not hearsay statements because they were not offered to prove the truth of the matter asserted. Not only were the statements

not hearsay, but also the trial judge removed any danger of prejudice by striking the evidence from the record at the close of the trial and instructing the jury not to consider any evidence except that related to the narrow conspiracy between Austin and Cantu.

### B. *Prosecutorial Misconduct*

 The government called the defendant's ex-wife, Sherry Shelburne, to testify that she had found a false W–2 form in the defendant's name among his papers. On cross examination, counsel for the defendant questioned Shelburne about her "bitter divorce" from Austin. The witness testified that the defendant had failed to pay child support and had accused her new husband of molesting the defendant's daughter. She also admitted that she had run over Austin with a car and had fired shots in his presence. To off-set the effect of this testimony, on re-direct examination the prosecutor elicited testimony from Shelburne as to what offensive actions the defendant had taken against her. She stated that he had physically abused her and forced her to have an abortion. She then testified: "Also my father was found dead in February—or January of 1975. I married Steve about a month after that. And the cause of his death is still unknown." The defendant objected to that statement and the court sustained the objection and instructed the jury to disregard it completely. The defendant argues that Shelburne's statements about his bad acts were inflammatory and highly prejudicial. He contends that the elicitation of these statements by the prosecutor amounted to gross misconduct requiring a reversal.

The witness was called to testify about a single fact, the presence of a bogus W–2 form among Austin's papers. The defense made her credibility an issue by emphasizing her violence toward Austin. The government on re-direct examination tried to rehabilitate the witness by proving Austin's violence toward her. Showing his violence toward her tended to explain her violence. Furthermore, Austin did not object to Shelburne's statements about his abuse of her and her involuntary abortion. A reversal is necessary only if the admission of these statements was plain error. *See* Fed.R.Evid. 103. Since her statements on re-direct examination were a legitimate effort to rehabilitate her credibility, it was not plain error to admit them. Shelburne's statement about her father's death was not an obvious accusation of murder. It was irrelevant, however, and could have been misinterpreted by the jury. The trial judge was correct in sustaining the defendant's objection and instructing the jury to disregard it. This instruction was sufficient to remedy any prejudice caused by Shelburne's vague statement about her father's death.

### C. *Jury Instructions*

The defendant contends that the jury instructions in this case were deficient because the district court refused to give the instructions he requested on ignorance of the law and on specific intent. It is well established that a trial judge's "failure to adopt a party's proposal will warrant reversal only where the charge considered as a whole does not correctly reflect the issues and law". *United States v. Harrelson,* 5 Cir.1983, 705 F.2d 733, 736–37. In this case, the jury charge was not misleading and was a sufficient instruction without using the defendant's requested charge.

 The district court instructed the jury to find Austin guilty only if he "willfully made false statements on [his] income tax returns". The court defined a willful act as one "committed voluntarily and purposely, with the specific intent to do something the law forbids".[1] The defendant

---

1. The court charged the jury:

 The word "willfully," as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do

something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

 If a person in good faith believes that an income tax return, as prepared by him or by

requested that the judge tell the jury that ignorance of the law or a "mistaken view of what the law requires" is a defense. The judge's refusal to instruct the jury on this issue was not erroneous. In *United States v. Garcia*, 5 Cir.1985, 762 F.2d 1222, 1224, we approved an identical jury charge, without an instruction on ignorance of the law, in a tax fraud case. *Accord United States v. Hughes*, 5 Cir.1985, 772 F.2d 904. Furthermore, Austin did not present an ignorance of the law defense. The defendant alleged that he relied in good faith on his accountant to prepare his tax returns. The trial judge instructed the jury that good faith reliance on an accountant is a defense. The judge's charge on willfullness was, therefore, accurate.

■ ·On the issue of specific intent, the trial judge gave a detailed charge to the jury.[2] The defendant argues that the instruction was incomplete because the trial judge did not tell the jury that the defend-

ant could not be found guilty as a result of "mismanagement", "carelessness", or someone else's wrongful intent. The trial judge's charge was, nonetheless, adequate. Of particular note is his instruction that Austin's good faith reliance on his accountant was a defense. The jury was not allowed to transfer the accountant's intent to Austin.

### III.

The defendant received a fair trial. The evidence supporting his guilt was sustantial and he does not challenge its sufficiency. The judgment is AFFIRMED.

his accountant, truthfully reports the taxable income and allowable deductions of the taxpayer under the Internal Revenue laws, he cannot be guilty of willfully preparing or presenting, or causing to be prepared or presented, a false or fraudulent tax return.

The government has charged that Mr. Austin knowingly and willfully made false statements on income tax returns, used the mails to defraud the government and stole government funds. If you find that Mr. Austin's actions were based on reliance in good faith upon the advice of his accountant or employees of the Internal Revenue Service, then you must find the defendant not guilty as charged in the indictment.

**2.** The judge instructed the jury as follows:

To act with unlawful and fraudulent intent means to act willfully, with the specific intent to deceive or cheat contrary to law; ordinarily for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself.

However, the evidence in the case need not establish that the United States or any person was actually defrauded, but only that the accused acted with "unlawful and fraudulent intent".

The crimes charged in this case are serious crimes which require proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act

which the law forbids or knowingly failed to do an act which the law forbids or knowingly failed to do an act which the law requires, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.

An act or a failure to act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made by he defendant, and all other facts and circumstances in evidence which indicate his state of mind. It is ordinarily reasonable to infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has proved beyond a reasonable doubt that the defendant possessed the required criminal intent. As I have said, it is entirely up to you to decide what facts to find from the evidence in the case.