983 F.2d 1073
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alicia SMALL and William G. Small, Defendants-Appellants.
 Nos. 92-1464, 92-1657.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 8, 1992.
Decided Jan. 19, 1993.
 
 Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 This case involves the consolidated appeals of William Small and his wife Alicia. The jury convicted William of conspiring to possess with intent to distribute cocaine, 21 U.S.C. § 846 & 18 U.S.C. § 2, as well as being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). The jury convicted Alicia of the conspiracy charge only. William claims that there was a variance between the conspiracy as alleged in the indictment and what was proven at trial, while Alicia argues that there was insufficient evidence to connect her to the alleged conspiracy. William also challenges his conviction under § 922(g)(1) on the ground that a question asked by the judge of one of the witnesses during trial effectively made a finding as to one of the elements of the offense.
 
 I. BACKGROUND
 
 2
 On September 11, 1991, a federal grand jury returned a superseding indictment against William and Alicia Small, as well as several co-defendants. The indictment charged that between January 1988 and September 1991, William, Alicia, Ruben Viart, and Bernardo Perez (who also went by "Jungo") "did knowingly and intentionally conspire between themselves with persons known and unknown to the grand jury to possess with intent to distribute in excess of five (5) kilograms of cocaine."
 
 
 3
 At trial, the government presented much of its case through the testimony of Gloria Martin, who had been a friend of the Smalls. Gloria testified that on three occasions in 1989, William travelled from Milwaukee to Chicago to buy cocaine from a man named Carlos. On the first trip, Alicia accompanied William, as did Gloria and her husband. Tr. 88-89. After the four arrived at Carlos' house, William and Carlos went to the kitchen for about twenty minutes. Tr. 90. They returned and William gave Gloria a shopping bag, Tr. 91, which she assumed contained drugs because William had told her the previous night that the purpose of the trip was to buy drugs. Tr. 91, 125-126. On the drive back to Milwaukee, Gloria used the bag as a pillow and could smell the drugs. Tr. 125. Once they arrived in Milwaukee, Gloria gave the bag back to William. The second and third trips were similar except that Alicia did not go along, Tr. 93, 95, and on the second trip William specifically told Gloria that there were three kilograms of cocaine in the shopping bag. Tr. 94. Also, after the third trip, William brought the cocaine, 1 kilo's worth, to the Martins' house where he weighed and repackaged it into smaller quantities. Tr. 97-98.
 
 
 4
 Gloria also observed the Smalls' drug-related activities in Milwaukee. She often saw a lot of drugs at the Smalls' house, on one occasion as much as 1.5 kilos. Tr. 100. She saw William sell cocaine out of bars and his house. Tr. 100-01. On four or five occasions, Gloria accompanied Alicia as Alicia went to the Smalls' residence to retrieve drugs for William to sell at bars. Tr. 101-02. William also had drug-dealings with Jungo. He sold drugs to Jungo, Tr. 103-04, and Jungo distributed them for William. Tr. 133. William was not the only one selling cocaine. Alicia also sold cocaine to her own customers. Tr. 102-03. Gloria went with Alicia to a bar two or three times as she delivered 1/2 kilo. Gloria also frequently observed Alicia sell cocaine at the Smalls' home. Tr. 103.
 
 
 5
 The government also presented the testimony of Ruben Viart. Viart worked for a Florida cocaine dealer named Luis Gato, who was a partner of Carlos Concepcion.[1] Viart went to Milwaukee in April of 1990 to help Concepcion set up a drug house. Gato would mail cocaine to Viart who would take it to Concepcion who in turn would sell it. Tr. 143-44. Concepcion gave money to Viart who would take it or send it back to Florida. Tr. 145, 148.
 
 
 6
 On one occasion in October of 1990, Viart drove from Florida to Milwaukee with one kilogram of cocaine supplied by Gato. Following Gato's instructions, he sold about half a kilo to William at the Smalls' house. William only paid for part of the cocaine at that time. Tr. 145-46. Viart testified that Gato and Concepcion shared the profits from the drug house operation, but that William was not part of the drug house set-up and was not a partner with Gato or Viart himself. Viart thought William was a partner with Concepcion, but he did not know that for a fact. As for Alicia, Viart testified that he never did any business with her. Tr. 159.
 
 
 7
 The government also introduced evidence of drug transactions not directly involving the Smalls. According to Viart, in early 1991, he sent cocaine three times to Jungo. The second and third times, the cocaine was intended for Concepcion, but Jungo received it on behalf of Concepcion because Concepcion did not have an address at that time. Tr. 148-51.
 
 II. ANALYSIS
 A. William (No. 92-1657)
 1. The Conspiracy Conviction
 
 8
 William argues that there was an impermissible variance between the one conspiracy as charged in the indictment and what he believes were multiple conspiracies proven at trial. William Br. 11. Such a claim "amounts to a challenge to the sufficiency of the evidence supporting the jury's finding that each defendant was a member of the same conspiracy." United States v. Townsend, 924 F.2d 1385, 1389 (7th Cir.1991). "There is no material variance from an indictment charging a single conspiracy 'if a reasonable trier of fact could have found beyond a reasonable doubt the existence of the single conspiracy charged in the indictment.' " United States v. Stevenson, 942 F.2d 1111, 1114 (7th Cir.) (quoting Townsend, 924 F.2d at 1389), cert. denied, 112 S.Ct. 596 (1991). The trier of fact may rely on circumstantial evidence to make such a finding. Id.
 
 
 9
 A single conspiracy exists "[i]f there is 'one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy.' " United States v. Sababu, 891 F.2d 1308, 1322 (7th Cir.1989) (quoting United States v. Varelli, 407 F.2d 735, 742 (7th Cir.1969), cert. denied, 405 U.S. 1040 (1972)). Although a single conspiracy requires one overall agreement, "it is clear that the participants in a conspiracy need not know all the other members." United States v. Curry, 977 F.2d 1042, 1053 (7th Cir.1992).
 
 
 10
 The government argues that as between William and Alicia, "the evidence clearly demonstrated an ongoing conspiracy to distribute cocaine." Gov't Br. 10. We agree. As we explained in United States v. Jackson, 974 F.2d 57, 59 (7th Cir.1992), "[t]o obtain a conspiracy conviction, the government must prove that the defendant (1) knew of the conspiracy, and (2) intended to associate himself with the criminal scheme." Alicia stresses that there was no evidence she was aware that William obtained drugs on the trip to Chicago. Even if this were true, we cannot ignore the other evidence. Gloria testified that she often saw drugs at the Smalls' residence and that she accompanied Alicia four or five times as Alicia went to the Smalls' residence to retrieve cocaine for William to sell. Tr. 101-02. Alicia knew that William was in the business of selling cocaine and she intended to assist him. There was clearly a conspiracy between William and Alicia.[2]
 
 
 11
 Having found that William conspired with Alicia, we need not inquire as to whether other individuals named in the indictment were also members of the conspiracy since they are not parties to this appeal. Even if William could show, for example, that he and Viart had not conspired together, this would not constitute a fatal variance. See United States v. Wozniak, 781 F.2d 95, 97 (7th Cir.1985) ("[A] jury may be told to convict a defendant who committed some variant of the events charged in the indictment, so long as the variant is also illegal."). It is important to remember that "[t]he crime of conspiracy focuses on agreements, not groups." United States v. Townsend, 924 F.2d 1385, 1389 (7th Cir.1991). For William, there is sufficient evidence of a conspiracy to sustain his conviction.
 
 
 12
 Moreover, we find that even if there was a variance, William has failed to make the required showing of prejudice. United States v. Collins, 966 F.2d 1214, 1221 (7th Cir.1992); Townsend, 924 F.2d at 1390. A number of factors determine if the defendant was prejudiced by a variance:
 
 
 13
 (1) surprise to the defendant resulting from the variance, (2) possibility of subsequent prosecution for the same offense, (3) likelihood of jury confusion as measured by the number of conspirators charged and the number of separate conspiracies proven, and (4) likelihood of jury confusion in light of the instructions given the jury limiting or excluding the use of certain evidence not relating to the defendant.
 
 
 14
 Townsend, 924 F.2d at 1410-11 (quoting United States v. Lindsey, 602 F.2d 785, 787 (7th Cir.1979)).
 
 
 15
 William claims to have been prejudiced in several ways. First, he argues that the single conspiracy charge allowed the government to introduce certain hearsay statements by Gloria under Federal Rule of Evidence 801(d)(2)(E). He refers to statements made by him and Alicia to Gloria, but he does not specify which statements he means. As such, there is no way to decide whether he was prejudiced in this manner.[3]
 
 
 16
 Second, William argues that the single conspiracy charge allowed the government to introduce evidence of crimes committed by Gato, Concepcion, and Jungo. Although the district court apparently did not give the jury any limiting instructions on the use of evidence not relating to William, see R.Doc. 22, William has nevertheless failed to show that this error affected his "substantial rights." Lindsey, 602 F.2d at 788. It is unlikely that the jury was confused by the evidence of these crimes since the case was not particularly complex, see Blumenthal v. United States, 332 U.S. 539 (1947), and in light of William's own criminal activities, those of Gato, Concepcion, and Jungo are unlikely to have substantially swayed the jury. Therefore, even if a variance existed, it was harmless.
 
 2. The Firearm Conviction
 
 17
 The police found a loaded .38 caliber revolver and a box of ammunition while executing a search warrant at the Smalls' residence. Tr. 179-82. The jury convicted William of being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). On appeal, William challenges this conviction. Specifically, William argues that, by asking a question of one of the witnesses, the district judge effectively made a finding as to one of the elements of the offense, namely that the firearm had travelled in or affected interstate commerce.
 
 
 18
 The incident that gave rise to William's challenge occurred during cross-examination of an agent of the Bureau of Alcohol, Tobacco and Firearms (ATF):
 
 
 19
 Q. So the initial sale may be involving interstate commerce but subsequent sales that are unregistered, you don't know if it's interstate commerce; is that correct?
 
 
 20
 A. Correct.
 
 
 21
 THE COURT: However it's a given that any gun for instance in this case by virtue of the fact that it was manufactured out of the State of Wisconsin has travelled the [sic] interstate commerce; is that correct?
 
 
 22
 THE WITNESS: Correct, yes.
 
 
 23
 Tr. 287. No objection was made to this question, which the government suggests constitutes waiver under Federal Rule of Evidence 614(c). Rule 614(c) provides that "[o]bjections to ... interrogation by [the court] may be made at the time or at the next available opportunity when the jury is not present." In his reply brief, William fails to suggest that such an objection was ever made. We find that he has waived the objection.
 
 
 24
 The government also argues that William cannot overcome this waiver because there was no plain error, see Rule 103(d), since the court's question "merely served to reiterate testimony which [the agent] had previously given and to clarify any confusion which may have resulted from the somewhat misleading question posed by counsel." Gov't Br. 16.
 
 
 25
 The record supports the government's position. On direct examination of the ATF agent, the following exchange took place:
 
 
 26
 Q. Assuming [the gun found at the Smalls' residence] was in Wisconsin, would it have travelled in interstate commerce?
 
 
 27
 A. Yes, it would have.
 
 
 28
 Tr. 279. Thus, the court's later questioning of the agent was, at worst, repetitive. More likely, however, it clarified things for the jury. By its question, the court did not "convey to the jury a bias or belief regarding the defendant's guilt." United States v. Gill, 909 F.2d 274, 278 (7th Cir.1990). Thus, we will not disturb William's conviction under 18 U.S.C. § 922(g)(1).
 
 B. Alicia (No. 92-1464)
 
 29
 Alicia's sole contention on appeal is that there was insufficient evidence for the jury to convict her of the conspiracy alleged in the indictment. Unlike William, she concedes that the conspiracy alleged in the indictment existed. She simply denies membership in it, claiming that "the evidence was insufficient to prove that [she] 'knew about or must have known about' the objectives of the conspirators." Alicia Br. 7.
 
 
 30
 In support of her claim of ignorance, Alicia points to her role in the first trip to Chicago. As far as the evidence reveals, she was simply along for the ride: drugs were not discussed in her presence, she never observed drugs on that trip, nor did she help William in any way. Yet this is only part of the evidence. Gloria testified that, on four or five occasions, she observed Alicia retrieve drugs for William so that he could make drug sales. From this evidence, a rational jury could find that Alicia knew that William was distributing cocaine, agreed to help him, and in fact did help him.
 
 
 31
 The real issue is whether Alicia knew the full extent of William's drug activities, and thus whether she was a member of the conspiracy as charged in the indictment. United States v. Baker, 905 F.2d 1100, 1106 (7th Cir.) (indicating that defendant must appreciate the scope of the conspiracy to be held liable as a conspirator), cert. denied, 111 S.Ct. 206 (1990). Alicia emphasizes that Viart testified that he had no business with her. In addition, nothing in the record indicates any connection between Alicia and Jungo. However, as noted previously, it is not necessary for each member of a conspiracy to know all the other members. Curry, 977 F.2d at 1053.
 
 
 32
 Alicia clearly knew that William was selling cocaine. Gloria testified that she often saw cocaine at the Smalls' residence, on one occasion as much as 1.5 kilograms. In addition, William frequently sold cocaine out of the Smalls' residence. We find that, viewing this evidence in the light most favorable to the government, a rational trier of fact could conclude that Alicia was aware of the general scope of the conspiracy.
 
 
 33
 Alicia tries to analogize her situation to that in Townsend. She argues that she was William's supplier of drugs and that, under Townsend, that relationship does not make her a conspirator with William. However, even if Alicia did supply drugs to William, the jury could have found that her other activities (i.e., fetching drugs for William) made her a conspirator.
 
 III. CONCLUSION
 
 34
 For the foregoing reasons, the convictions of William and Alicia Small are AFFIRMED.
 
 
 
 [1]
 Tr. 142-43, 154-55. Carlos Concepcion is not the same Carlos that William met in Chicago. Tr. 90
 
 
 [2]
 William does not openly admit to a conspiracy between him and his wife, but he presents no serious argument in opposition. He seems to argue that the law should be that a conspiracy cannot exist between husband and wife. William Br. 17-18. However, he acknowledges that the law is to the contrary, citing United States v. Dege, 364 U.S. 51 (1960)
 
 
 [3]
 William also argues that he was prejudiced because the single conspiracy charge allowed the government "to take advantage of relationships that existed between certain defendants," namely the husband/wife relationship. William Br. 19. However, the mere fact that a husband and wife were charged as conspiring together is not one of the factors recognized in Lindsey