16 F.3d 1225
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Kerry THOMPSON, Petitioner/Appellant,
v.
UNITED STATES of America, Respondent/Appellee.
 No. 92-3610.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 25, 1994.
Decided Feb. 17, 1994.
 
 Before CUMMINGS, BAUER, and ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 Kerry Thompson appeals from the denial of a motion brought under 28 U.S.C. Sec. 2255. Thompson and two co-defendants were charged with conspiracy to deliver cocaine, and they were tried together. After Thompson argued unsuccessfully on direct appeal that the court committed reversible error by refusing to give a multiple conspiracies instruction, his co-defendants obtained relief based on the court's refusal to give the same instruction. Thompson filed a Sec. 2255 motion. The government argues that under the "law of the case" doctrine, this court has already determined that the district court committed no error by refusing the multiple conspiracies instruction. Thompson argues that the success of his co-defendants has changed the law of the case and that his case should be re-examined.
 
 I.
 
 2
 Kerry Thompson, Wesley Dennis and Keith James Wims were charged in a one-count indictment with conspiracy to distribute cocaine in violation of 21 U.S.C. Secs. 841, 846. At their joint trial the government presented evidence establishing that on July 18, 1989, Thompson agreed to sell cocaine to undercover government agent Gordon Myers. Thompson informed Myers that he would have to talk first to his "man." After calling Dennis and meeting with him, Thompson delivered one ounce of cocaine to Myers for $1200.
 
 
 3
 On July 21, 1989, Thompson again agreed to obtain cocaine for Myers. Thompson informed Myers that his "man" had the cocaine, but that Myers would need to give him the purchase money before he could retrieve it. Thompson and Myers met outside a restaurant, and Thompson entered Myers' car to discuss the cocaine sale. Myers agreed to front half the money, $1200, for two ounces of cocaine. Thompson took $1200 in marked bills and walked away. When he returned, Myers drove Thompson to a nearby park. Myers returned to the parking lot of the restaurant. Surveillance officers in the park observed Thompson walk to a white Lincoln Continental, open the door and lean in. He then approached Wims, who was standing nearby with another person, and embraced him. Thompson walked away, pausing to rummage in a garbage can. Wims and the other person entered the Lincoln and drove out of the park. Thompson delivered the promised cocaine to Myers outside the restaurant. Wims and the other person had driven to the vicinity of the restaurant; Wims stood inside the restaurant at the window and Thompson deliver the cocaine to Myers. Thompson gave Myers two ounces of cocaine in two plastic bags. Myers tested the substance before giving Thompson the other $1200. Myers then gave an arrest signal. Wims was arrested as he left the restaurant; in his possession was $3955 in cash, including the $1200 which Myers had advanced to Thompson. Wims also had a one hundred dollar bill from the money Myers had paid in the July 18 purchase involving Dennis.
 
 
 4
 Thompson, Wims and Dennis were tried together. At trial a "multiple conspiracies" instruction was requested. The court refused to give the instruction because it found that the evidence supported only one conspiracy. The jury found the three defendants guilty of conspiracy.
 
 
 5
 The three defendants filed separate appeals. We affirmed Wims' conviction; he had not presented an argument concerning the multiple conspiracies instruction. United States v. Wims, 907 F.2d 152 (7th Cir. June 19, 1990). Thompson presented the issue of the multiple conspiracies instruction, and we also affirmed his conviction. United States v. Thompson, 916 F.2d 715 (7th Cir. Oct. 17, 1990) cert. denied, 498 U.S. 1108 (1991). When Dennis appealed, we reversed his conviction based upon the trial court's refusal to give the multiple conspiracies instruction and upon the insufficiency of the evidence to support a verdict for a single conspiracy. United States v. Dennis, 917 F.2d 1031 (7th Cir.1990).
 
 
 6
 Wims filed a Sec. 2255 motion in the trial court, arguing that his counsel had been ineffective for failing to raise the multiple conspiracies issue. The court reluctantly granted the motion, holding that Wims and Dennis were in the same position. We subsequently affirmed the district court's judgment granting relief to Wims. Wims v. United States, No. 92-1624, 1992 U.S.App. LEXIS 33463 (7th Cir. Dec. 22, 1992) (unpublished order).
 
 
 7
 Prompted by the success of his former co-defendants, Thompson filed a Sec. 2255 motion in the district court. The court denied the motion. The court explained that Thompson was in a different position than Wims and Dennis, and that the Seventh Circuit had already determined that the trial court had not erred in refusing to grant Thompson the multiple conspiracies instruction.
 
 II.
 A. Law of the Case
 
 8
 The doctrine of "law of the case" expresses "the courts' general refusal to reopen what has previously been decided." International Union of Operating Engineers, Local Union 103 v. Indiana Constr. Corp., No. 92-1356, slip op. at 7 (7th Cir. Jan. 4, 1994). "The gist of the doctrine is that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." Key v. Sullivan, 925 F.2d 1056, 1060 (7th Cir.1991). The court should not reconsider a previous decision in the same case "unless one of three 'exceptional circumstances' exists: the evidence in a subsequent trial was substantially different; controlling authority has since made a contrary decision of law applicable to such issues; or the decision was clearly erroneous, and would work a substantial injustice." Indianapolis Power & Light Co. v. N.L.R.B., 898 F.2d 524, 528-29 (7th Cir.1990) (quoting Evans v. City of Chicago, 873 F.2d 1007, 1014 (7th Cir.1989)).
 
 
 9
 On direct appeal Thompson argued that the failure of the district court to provide the jury with his proposed multiple conspiracies instruction allowed the jury to convict him even if it determined that he was not guilty of the conspiracy charged in the indictment. Thompson, 1990 U.S.App. LEXIS 18289. The proposed instruction stated that the government must prove the single conspiracy alleged, and that the jury could not properly convict if it determined that multiple conspiracies existed. Id. We held that even if there was a variance between the evidence offered at trial and the facts alleged in the indictment, Thompson could not obtain a reversal because he did not demonstrate prejudice. Id. (citing United States v. Lindsey, 602 F.2d 785 (7th Cir.1979)). We similarly found that Thompson could not succeed on his claim that the court improperly refused his multiple conspiracies instruction because he did "not argue any prejudice that resulted from this failure, and none is apparent from the record." Id.
 
 
 10
 In this appeal Thompson argues again that the district court erred in refusing to give the multiple conspiracies instruction. Armed with this court's subsequent holding in Dennis, Thompson urges us to reconsider the holding in his direct appeal due to changed circumstances. The changed circumstance, he argues, is the reversal of Dennis' conviction due to the lack of evidence proving that Dennis and Wims were part of a single conspiracy. Thompson argues that the determination by this court that there was not a single conspiracy between Thompson, Wims and Dennis is the new law in this case replacing the initial determination in Thompson's direct appeal.
 
 
 11
 Thompson's assertion appears reasonable on its face, but the facts reveal that the opinion in Dennis and the order in Thompson do not conflict on the issue of whether a multiple conspiracies instruction was improperly denied to Thompson. In Thompson we did not rule on whether the evidence was sufficient to support a single conspiracy. We held that regardless of whether the trial court should have given the proposed instruction, the failure to do so was not reversible error because Thompson failed to show prejudice from the denial of the instruction. That is the same issue raised in this appeal, and our prior finding was not altered by the holding in Dennis. Dennis did not hold that the evidence was insufficient to establish that Dennis was involved in a conspiracy; Dennis held that the evidence was insufficient to establish that Dennis was involved in a single overarching conspiracy with Thompson and Wims. Dennis was prejudiced by the court's refusal to allow him to present a theory of defense to the jury; the refusal to give the instruction denied Dennis a fair trial. Dennis, 917 F.2d at 1033.
 
 
 12
 Thompson, on the other hand, is in a different position. Although the trial court erred by not allowing a multiple conspiracies instruction at the joint trial of Thompson, Dennis and Wims, See Dennis, 917 F.2d at 1033; see also United States v. Kendall, 665 F.2d 126, 136 (7th Cir.1981) ("if the possibility of multiple conspiracies exists, the trial judge must so instruct the jury"), cert. denied, 455 U.S. 1021 (1982), the proposed instruction was not necessary to ensure Thompson a fair trial. The refusal of the trial court to give a proposed multiple conspiracies instruction is not error "unless the defendant [ ] demonstrate[s] that [he] has been prejudiced by the variance itself." United States v. Curry, 977 F.2d 1042, 1052 (7th Cir.1992) (quoting United States v. Townsend, 924 F.2d 1385, 1411 (7th Cir.1991)), cert. denied, 113 S.Ct. 1357 (1993). We have already determined that Thompson was not prejudiced by the court's refusal to give the instruction, and the decision concerning Dennis does not change that determination. The factors that may indicate prejudice were already examined by this court:
 
 
 13
 (1) surprise to the defendant resulting from the variance, (2) possibility of subsequent prosecution for the same offense, (3) likelihood of jury confusion as measured by the number of conspirators charged and the number of conspirators charged and the number of separate conspiracies proven, and (4) likelihood of jury confusion in light of the instructions given the jury limiting or excluding the use of certain evidence not relating to the defendant.
 
 
 14
 Thompson, No. 90-1182, 1990 U.S.App. LEXIS 18289; see also Townsend, 924 F.2d at 1410-11. As this court determined on Thompson's direct appeal, none of these factors is relevant to Thompson. If the jury had been given the option of finding that there were two distinct conspiracies, they could have found that Thompson was involved in two conspiracies: one conspiracy with Dennis and another with Wims. No decision by this court has included the suggestion that the evidence was insufficient to support a finding that Thompson and Wims had at least one agreement and that Thompson and Dennis had at least one agreement. The only prejudice alleged by Thompson is that, in the absence of a single conspiracy, the jury could have found that the two alleged conspiracies were no more than two buy-sell agreements. We already determined in Thompson's direct appeal that the record revealed no prejudice to Thompson.
 
 
 15
 Thompson argues further that if Wims were to be acquitted upon retrial, that Thompson would have conspired with himself. This is incorrect. The jury could not have convicted only Thompson of conspiracy in their joint trial. When Wims is retried, he will not be tried by the same jury that heard the evidence against Thompson. Inconsistent jury verdicts are generally not reviewable. See, e.g., United States v. Powell, 469 U.S. 57 (1984) (conviction of criminal defendant on one count should not be vacated merely because it is inconsistent with acquittal on other counts). Inconsistent jury verdicts are even less problematic when two different juries are involved. The second jury may hear different evidence, the attorneys may be different, and the theories of the case may be different. In short, Wims' second jury will experience a completely different trial. By being tried before two different juries, Wims and Thompson will not be similarly situated, see Bontkowski v. United States, 850 F.2d 306 (7th Cir.1988) ("it would seem to be fundamentally unfair to treat similarly situated defendants differently where the difference ... is solely a matter of timing"), and an acquittal for Wims should have no impact on Thompson.
 
 B. Ineffective Assistance of Counsel
 
 16
 Alternatively, Thompson argues that his attorney on direct appeal was ineffective for failing to fully develop an argument explaining how he was prejudiced by the lack of a multiple conspiracies instruction. Thompson asserts that his attorney failed to argue that without the multiple conspiracies instruction the jury was precluded from finding that the two separate transactions were buy-sell agreements and not conspiracies. In order to establish ineffective assistance of counsel, Thompson must show that his counsel committed serious errors that "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668 (1984), and that due to counsel's deficient performance the result of the proceedings was fundamentally unfair or unreliable. Lockhart v. Fretwell, 113 S.Ct. 838 (1993) (citing Strickland, 466 U.S. 668).
 
 
 17
 Thompson's argument fails on the second prong. The arguments that he claims were not developed sufficiently on appeal were presented in this appeal. As discussed above, the trial court did not commit reversible error in refusing the instruction to Thompson. The alleged failure of Thompson's counsel to make arguments concerning resulting prejudice from the denial of the instruction did not lead to a fundamentally unfair or unreliable result.
 
 C. Amount of Drugs
 
 18
 Thompson argues that, even if the court finds that there was a conspiracy between Thompson and Wims, the amount of cocaine attributed to the transaction involving Dennis should be excluded in the calculation of his sentence due to the reversal of Dennis' conviction. Thompson's sentence was based in part on section 1B1.3 of the Sentencing Guidelines, which requires the sentencing court to consider "relevant conduct" in determining the amount of cocaine for sentencing purposes. Thompson may not challenge the court's findings under the Sentencing Guidelines in a Sec. 2255 motion, see Scott v. United States, 997 F.2d 340, 341-43 (7th Cir.1993); however, he does have a due process right to be sentenced on the basis of reliable and accurate information. United States v. Tucker, 404 U.S. 443, 447 (1972). As stated earlier, Dennis' conviction was reversed because there was not enough evidence to establish that he participated in a single conspiracy. The court did not find that the evidence was insufficient to establish that Dennis had conspired with Thompson. The calculation under Sec. 1B1.3 includes all "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction". U.S.S.G. Sec. 1B1.3(a)(2); see United States v. White, 888 F.2d 490 (7th Cir.1989). Due process is satisfied at sentencing if relevant conduct is proven by a preponderance of the evidence. United States v. Trujillo, 959 F.2d 1377, 1380-81 (7th Cir.), cert. denied, 113 S.Ct. 277 (1992). The evidence establishes that the cocaine from the Dennis-Thompson transaction was relevant conduct properly included.
 
 
 19
 AFFIRMED.